Bernard UEHLEIN, et al.,
Plaintiffs-Appellees,

v.

JACKSON NATIONAL LIFE
INSURANCE COMPANY, et
al., Defendants.

Appeal of Shirley A. MUELLER and
Gregory A. Jennings, Executor of
the Estate of Robert V. Mueller.

No. 86–1729.

United States Court of Appeals,
Seventh Circuit.

Submitted May 27, 1986.

Decided June 25, 1986.

Rehearing and Rehearing En Banc
Denied Aug. 13, 1986.

Walter P. Maksym, Jr., Walter P. Maksym & Assoc., Oakbrook, Ill., Peter M. Sfikas, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., James R. Truschke, James R. Truschke & Assoc., Arlington Heights, Ill., for defendants.

Donald T. Bertucci, Chicago, Ill., James E. Gierach, Gierach, Schuller & Walsh, Ltd., Oak Lawn, Ill., James T. Ryan, Ryan & Moore, Ltd., Arlington Heights, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The plaintiffs say that they were defrauded by Robert V. Mueller, that the fraud violates the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, that Robert Mueller used some of the money from the fraud to buy life insurance, and that they are therefore entitled to the proceeds of the policies

now that Robert Mueller has died. Shirley Mueller, Robert's widow and the sole beneficiary of more than $4.5 million in life insurance, also wants the proceeds. The insurers deposited the proceeds in court under 28 U.S.C. § 1335 with a request that the judge decide who gets the money.

Shirley Mueller contests the RICO suit on the merits, but she also wants the money in the interim. She asked the district judge to turn the proceeds (with interest, now more than $5 million) over to her, contending that she had been forced to sell the family home and take up employment as a clerk in a department store "in order to survive and finance her daughters' education, not to mention her need to defend this novel and complex litigation and its ruinous impact." In a brief minute order the district judge denied her motion to dismiss the complaint and her motion "for immediate hearing and ruling". The court also denied her motion to obtain the $5 million. In open court the judge invited her to make a less ambitious motion seeking any funds in excess of the amount claimed by the plaintiffs. As Mrs. Mueller puts it in her memorandum on jurisdiction: "Rather than supplicate herself ... the widow has filed her notice of appeal seeking review by this Court of the district court's ruling, which she respectfully submits is tantamount to an injunction holding hostage her husband's death benefits until the district court is satisfied as to the ultimate disposition of all claims." She also indirectly relies on the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), with which we begin.

The order retaining the proceeds in the court's possession does not finally dispose of the litigation. Much lies ahead—that is the premise of Shirley Mueller's request to have the money now rather than (if she prevails) at the end of the litigation. Her position is, however, superficially similar to that of the plaintiff in *Cohen*, who appealed when instructed to post a bond to secure the costs of litigation. The dispute about the bond, like the dispute in this case, concerns who shall hold a sum of money—a party or the court—during the course of the litigation. The Supreme Court termed the order to post a bond an appealable collateral order because the order finally resolved a dispute unrelated to the merits and was effectively unreviewable after a final judgment. (Even if the order to post the bond had been erroneous, this would not have been a good reason to reverse any judgment on the merits.) Perhaps the denial of a motion to pay out the proceeds is collateral in the same sense. Surprisingly, apparently no reported decision addresses the question whether a refusal to turn over the proceeds in an interpleader action is an appealable collateral order.

■ An order is collateral within the meaning of *Cohen* only if it finally resolves the subject in dispute, is independent of the merits, and is not effectively reviewable on appeal from the final judgment. *Richardson-Merrell, Inc. v. Koller*, —— U.S. ——, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *In re Schmidt*, 775 F.2d 822 (7th Cir.1985). Although this case, like *Cohen*, involves the custody of money pending decision, it meets none of the requirements. It is not final because the district judge may reconsider as the case progresses. See *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n. 11, 98 S.Ct. 2454, 2458 & n. 11, 57 L.Ed.2d 351 (1978); *In re UNR Industries, Inc.*, 725 F.2d 1111, 1120–21 (7th Cir.1984); cf. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 12 n. 14, 103 S.Ct. 927, 935 n. 14, 74 L.Ed.2d 765 (1983). The judge invited one form of reconsideration—a request for less than the whole fund. The court might reconsider even the request for the whole thing if, as the litigation progresses, it becomes likely that Shirley Mueller will prevail. A judge unwilling to pay out the stakes of the case before delving into the merits may be more willing as his knowledge increases. This consideration also shows why the second requirement, independence of the merits, is not satisfied. Be his case good or bad, the plaintiff in *Cohen* had to post a bond. Mrs. Mueller, in contrast, may get the money if she persuades

the district judge that she has a good case. An appellate court could not evaluate the district court's decision without deciding who is likely to prevail on the merits. Mueller invites us to do this, but the policy against piecemeal appellate litigation embodied in the "final decision" rule of 28 U.S.C. § 1291 bars the way.

The third requirement, effective unreviewability on appeal, also distinguishes this case from *Cohen*. True, if the judge has erred in refusing to turn the funds over, this will not be a reason to reverse any judgment on the merits, just as in *Cohen* an error concerning the bond would not have affected the judgment. But if the refusal to turn over the funds was in error, this will not necessarily hurt Shirley Mueller. If she loses on the merits, she is not entitled to all the money now or ever. If she wins she receives the fund, together with interest. The interest compensates her for the delay. The plaintiff in *Cohen* had to pay a bonding company for the bond; this premium was not recoverable. Mueller argues that she suffers an injury in the interim because she has sold her house and gone to work. This is not different in kind, however, from the hardship many litigants endure during a lawsuit. Ongoing litigation may induce people to sell assets or go to work to pay counsel while meeting life's other obligations. Many interim orders, especially discovery orders, may have significant effects on the cost of litigation and on parties' control of their lives. They may be directed to show up for interrogation or to pay to reproduce documents. If this sort of effect were enough to make the order appealable, we would be deluged with interlocutory appeals, each arguing that prompt review could end the litigation (and the sacrifice) sooner.

Every case has housekeeping and discovery orders, many of them costly to the litigants. They are not appealable just because expensive. See *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1378–79 (7th Cir.1985); *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 773 F.2d 151 (7th Cir. 1985). What is at stake here is money now

versus money later, and this difference is not the sort of irreparable harm that is effectively unreviewable on appeal. *Mulay Plastics, Inc. v. Grand Trunk Western R.R.*, 742 F.2d 369 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1409, 84 L.Ed.2d 798 (1985). Mrs. Mueller may have an easier time than other litigants aggrieved by the costs of litigation. She is entitled to the $5 million if she wins, and perhaps to some of the fund even if she loses; if she can persuade a third party that her legal position has merit, she will be able to sell or borrow against her interest in the fund. Whether she can borrow or not, however, she must rely on the discretion and good sense of the district court, and not on appellate review, to adjust the hundreds of disagreements on the road to judgment in any significant litigation.

It does not help to recharacterize the judge's decision as the denial of an injunction appealable under 28 U.S.C. § 1292(a)(1). The order does not compel anyone to do anything, and it is odd to think of the court's refusal to instruct its clerk to pay money as a "denial of an injunction." During any litigation someone holds the stakes. Usually that someone is the defendant. The plaintiff in a tort suit could not get immediate appellate review by filing a motion for an order requiring the defendant to pay up immediately. Section 1292(a)(1) is designed to allow prompt appeals of decisions on the merits, and this purpose informs the definition of "injunction." Only an order effectively on the merits, coupled with an irreparable effect on the merits, amounts to the grant or denial of an interlocutory injunction. *Carson v. American Brands, Inc.*, 450 U.S. 79, 84–86, 101 S.Ct. 993, 996–98, 67 L.Ed.2d 59 (1981); *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966); *Donovan v. Robbins*, 752 F.2d 1170, 1173–74 (7th Cir.1985). If the stratagem of asking for a turnover of assets from a party as part of an immediate judgment will not

produce an appealable order, then a request to pay out assets within the court's control also does not yield an appealable denial of "injunctive" relief. *Guerin v. Guerin,* 239 F.2d 909, 913 (9th Cir.1956).

■ Mrs. Mueller relies principally on *In re Feit & Drexler, Inc.,* 760 F.2d 406, 411–13 (2d Cir.1985), which took jurisdiction of an interlocutory appeal from an order forbidding a party to the litigation to transfer certain property and requiring the party to deposit other property with an escrow agent. We need not decide whether to follow this case, in which the order seemingly had little to do with the merits and therefore has a questionable pedigree as a preliminary "injunction" under *Switzerland Cheese* and *Carson.* See also, e.g., *I.A.M. National Pension Fund Benefit Plan v. Cooper Industries, Inc.,* 789 F.2d 21 (D.C.Cir.1986) (order to make overdue pension fund contributions during litigation is not an injunction); *Groseclose v. Dutton,* 788 F.2d 356 (6th Cir.1986) (an order to draw up plans for a remedy is not an injunction). Any order concerning discovery could be recharacterized as an "injunction to turn over documents" unless courts are careful about the scope of § 1292. See C. Wright, *The Law of Federal Courts* 550–51 (4th ed. 1983); *Hayes v. Allstate Insurance Co.,* 722 F.2d 1332, 1341 (7th Cir.1983) (dissenting opinion) (collecting cases). In this case, however, neither a party nor a stranger to the case has been ordered to turn anything over to anyone else, and no one has been restrained from using his property as he pleases. Mrs. Mueller is in the same position she would be in if the insurance companies had held onto the money pending the disposition of the litigation. For the reasons we have given, the denial of one litigant's request to compel another litigant to surrender the stakes of the case is not the denial of an injunction or otherwise appealable. We need say no more to hold that the appeal here must be

DISMISSED.