UNITED STATES of America, Plaintiff,

v.

ETTRICK WOOD PRODUCTS, INC., et al., Defendants,

and

UNITED BANK OF OSSEO and Robert J. Ofsdahl, Defendants, Third–Party Plaintiffs–Appellants,

v.

Arnold BROVOLD and Victor Folkedahl, Third–Party Defendants–Appellees.

No. 88–3399.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1989.

Decided Oct. 19, 1990.

See also 683 F.Supp. 1262.

David C. Sarnacki, Asst. U.S. Atty., Office of the U.S. Atty., Madison, Wis., for plaintiff.

William Kirkpatrick, Hale, Skemp, Hanson & Skemp, LaCrosse, Wis., Lawrence Piersol, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S.D., for plaintiffs-appellants.

Jeff P. Brinckman, Bosshard & Associates, LaCrosse, Wis., for defendants-appellees.

Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.

PER CURIAM.

United Bank of Osseo and Robert J. Ofsdahl appeal the district court's decision to grant summary judgment dismissing their third-party complaint for indemnity and contribution against Arnold Brovold and Victor Folkedahl. Before deciding the mer-

its, we must determine whether we have jurisdiction to hear this appeal under 28 U.S.C. § 1291 and Fed.R.Civ.P. 54(b). We find that jurisdiction exists, and we remand for further proceedings.

## I

In 1980 Ettrick State Bank (which has since changed ownership and is now named United Bank of Osseo, and which we refer to as "the Bank") made two loans to Ettrick Wood Products. The Farmers Home Administration (FmHA) guaranteed 90% of those loans, allegedly as a result of misrepresentations the Bank's agents made in applying for the guarantees. (We refer to the entire transaction as the "FmHA loans.") The loans went bad, and FmHA ended up repaying the guaranteed portions of the loans. In July 1987 FmHA sued the Bank, several of the Bank's former directors, and its accountant. Among the individual defendants were Robert J. Ofsdahl and Robert O. Ofsdahl, former Bank directors. The complaint alleged that the defendants were liable for losses the FmHA sustained as a result of the loan guarantees. Claims were based on the False Claims Act, 31 U.S.C. § 3729 et seq., and common law theories of fraud, breach of contract, and unjust enrichment. In May 1988 the Bank and Robert J. Ofsdahl filed a third-party complaint against Arnold Brovold and Victor Folkedahl, former Bank directors that FmHA had not sued.[1] That complaint sought contribution or indemnity from Brovold and Folkedahl, alleging that their negligence had contributed to FmHA's losses.

Back in 1985 the Bank had filed a suit against the Ofsdahls. That suit also named as a defendant Fidelity and Deposit Company of Maryland (F & D), which had issued a directors and officers liability policy to the Bank. See Wis.Stat. §§ 632.24 and 803.04(2)(a), which allow direct actions against insurance companies in Wisconsin. F & D's policy provided $1,000,000 of cov-

erage for losses occurring in any given policy year. The Ofsdahls were insureds under the F & D policy. In its complaint against the Ofsdahls, the Bank alleged claims for negligence, breach of contract, breach of fiduciary duty, and violations of the federal and Wisconsin RICO statutes. The complaint's factual allegations, for the most part, centered around improper loans the Ofsdahls had been involved in making. The Bank's 1985 complaint, however, did not mention the FmHA loans.

The Bank's 1985 complaint also did not mention Brovold and Folkedahl, but the Bank's attorney discussed several times with Brovold and Folkedahl their potential liability as Bank directors. Correspondence among the parties to the suit and Brovold and Folkedahl also indicates that the parties considered more than the claims and parties in the suit as they discussed settlement. In a June 10, 1985, letter to F & D and the Ofsdahls' attorney, the Bank's attorney specifically discussed the FmHA loans:

The other aspect of the Ettrick Wood Products situation is the FMHA guaranteed portion.... A demand letter has been received from FMHA indicating that the amounts due to it, including interest, are approximately $650,000. This amount has not been included as an element of our damages in the settlement discussions to date due to the fact that no demand had been received from FMHA. Since the criminal charges [against Ofsdahl, the Bank, and others concerning the FmHA loans] are still pending and I recognize that FMHA's claim can still be considered a contingent liability, I am not including that in the settlement discussions at this time though we would, naturally, reserve any rights we may have to recovery against the Officers, Directors [including Brovold and Folkedahl] and F & D in the event the bank's liability to repay FMHA becomes an actual obligation.

This part of the third-party claim was settled and dismissed with the rest of the case. We discuss the dismissal further on in this opinion.

1. The third-party complaint also named Halsted, Shoup & Co., Ltd. (the Bank's accounting firm at the time of the FmHA loans) and ABC Insurance Co. (Halsted Shoup's liability insurer).

The June 10 letter also threatened to sue the other directors if the case was not settled.

On June 25 the Bank's attorney wrote Brovold and Folkedahl, specifically threatening to sue them. On July 31 F & D's attorney wrote to, among others, the attorney for Brovold and Folkedahl. The letter advised their attorney that Brovold and Folkedahl were insureds under the F & D policy, discussed aspects of the actual and potential claims at issue (including that the Bank had prepared but not yet filed a complaint against Brovold and Folkedahl), and stated F & D's hope to resolve the matter without litigation. The letter also discussed potential defenses F & D might raise to any claim for coverage or defense by Brovold and Folkedahl. Brovold's and Folkedahl's attorney responded to this letter on August 16. The August 16 letter noted Brovold's and Folkedahl's potential liability, focusing in large part on the potential liability from the FmHA loans. In light of this potential liability, Brovold's and Folkedahl's attorney urged F & D to settle the Bank's claims against all directors for the amount the Bank then requested, an amount well below F & D's policy limits.

Time passed, and the Bank's lawsuit continued. In June 1987 the Bank, the Ofsdahls, and F & D executed a written agreement settling the case for a $550,000 payment from F & D to the Bank. The agreement started by naming the parties to the Bank's suit against the Ofsdahls and F & D. The agreement did not mention Brovold and Folkedahl, but the agreement stated this purpose (emphasis added):

WHEREAS, [the Bank, the Ofsdahls] and F & D desire to settle and compromise all disputes arising out of the Action *and, except as specifically provided herein, all potential disputes between [the Bank] and F & D which may arise under any and all policies issued by F & D to [the Bank] and any of its officers and/or directors*, including but not limited to those policies referenced herein.

The agreement went on to provide (emphasis added):

*THIRD:* Before the Stipulation of Dismissal and Prejudice is filed and served, and within Ten (10) days from the date of execution of this Settlement Agreement, F & D shall deliver to [the Bank] its check made payable to "United Bank, formerly known as Ettrick State Bank" in the amount of Five Hundred Fifty Thousand Dollars ($550,000) in full settlement and compromise of the Action *and all other disputes and potential disputes settled, indemnified or released herein.*

*FOURTH:* [The Bank] hereby irrevocably and unconditionally releases, acquits, and forever discharges the OFSDAHLS and F & D and each of OFSDAHLS' or F & D's predecessors, successors, assigns, agents, directors, officers, employees, representatives and attorneys, or any one or more of them, from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, cause [sic] of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees) relating to or arising out of the Action.

OFSDAHLS and F & D hereby irrevocably and unconditionally release, acquit, and forever discharge [the Bank] and its successors, assigns, agents, directors, officers, employees, representatives and attorneys, or any one or more of them, from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees) relating to or arising out of the Action.

*FIFTH:* As a material inducement to F & D to enter into this Settlement Agreement, [the Bank] further agrees to indemnify and hold harmless F & D from and against any and all charges, complaints, claims, liabilities, losses, suits, costs and expenses (including attorneys' fees) arising out of any claim or alleged claim from any party whatsoever under any policies of insurance issued by F & D

to [the Bank] or its officers or directors, and in the event of any such claim or action, [the Bank] agrees, at its own expense, to defend F & D against such claim or action and to pay any settlement or judgment resulting therefrom. It is agreed that the foregoing indemnification is not intended to apply to, and F & D is not released from, any liability, if any, for attorneys' fees incurred by [the Bank] in the cases of *McLeod vs. Ettrick State Bank or Bishop vs. Ettrick State Bank*, both of which are claims under the Special Multi–Peril Policy No. 6904771. . . .

*NINTH:* This Settlement Agreement shall be binding upon [the Bank, the Ofsdahls] and F & D and upon their respective successors, assigns, agents, directors, officers, employees, representatives, attorneys, heirs, administrators, executors, and shall inure to the benefit of [the Bank, the Ofsdahls] and F & D, and each of them, and to their respective successors, assigns, agents, directors, officers, employees, representatives, attorneys, heirs, administrators, and executors.

A few weeks after the Bank, the Ofsdahls, and F & D executed the agreement, the United States filed its suit against the Bank and the Ofsdahls. Shortly afterward, the Bank added Brovold and Folkedahl. Brovold and Folkedahl met the third-party action with a motion for summary judgment, asserting that the settlement in the 1985 suit released them from the Bank's claims. The district court agreed, reasoning that although the specific release language in paragraph four of the settlement agreement referred only to the Ofsdahls and F & D's liability "relating to or arising out of the action," the agreement as a whole, as well as the context in which the parties agreed as evidenced by the correspondence among the parties, clearly showed that the Bank agreed to release all the former directors (including Brovold and Folkedahl) *from any liability to the Bank on claims arising from their service as directors.* The Bank appeals from this decision.

II

Our first problem is jurisdictional. After the district court granted their summary judgment motion, Brovold and Folkedahl asked the court to enter a final judgment dismissing them from the case. The court denied that motion, citing as its reason this court's "preference . . . to avoid piecemeal appeals." Two weeks later, on November 14, the remaining parties informed the court that they had settled the dispute. The district court did not immediately dismiss the case; instead, the court entered an order removing the case from the docket of active cases. The judge informed the parties that if they "intend[ed] to file a stipulation of dismissal under Fed.R.Civ.P. 41(a)(1)(ii) or a document requesting court approval of the settlement, such document should be filed promptly." The same day she entered a judgment dismissing Brovold and Folkedahl. The order's last line, before the judge's signature, states: "It appearing that there is no just reason for delay, I direct that this final judgment be entered." On December 13 the remaining parties filed a stipulation of dismissal. On December 30 the district court entered a judgment dismissing the entire case with prejudice.

The Bank filed a notice of appeal on December 6 from the judgment entered on November 14. (Robert J. Ofsdahl also appealed; because he is represented by the same counsel and makes the same arguments as the Bank, we refer only to the Bank.) The Bank did not file a notice of appeal from the December 30 judgment that ended the entire case. This court has jurisdiction over appeals from a district court's final decisions under 28 U.S.C. § 1291. Generally, an order constitutes a final decision if it ends the litigation and leaves nothing to be decided in the district court. *Adams v. Lever Bros. Co.*, 874 F.2d 393, 394 (7th Cir.1989). The November 14 judgment dismissing Brovold and Folkedahl was not final in this sense because it did not wrap up the case; the other claims between the other parties remained. Since the Bank appealed from an order that did

not terminate the entire case, we asked the parties at oral argument to address whether we have jurisdiction over this appeal.

The Bank suggests that the November 14 order dismissing Brovold and Folkedahl, when coupled with the order entered the same day announcing that the remaining parties had settled and removing the case from the active docket, ended the case for all practical purposes and was therefore an appealable final decision. That argument fails. The district court's November 14 order announcing the settlement specifically contemplated further activity in that court (a formal stipulation of dismissal, a motion to approve the settlement, or an order reactivating the case if the settlement should collapse); it explicitly did not end the litigation. See *Foremost Sales Promotions, Inc. v. Director, BATF,* 812 F.2d 1044, 1045 (7th Cir.1987). The district court did not render a final decision in this case until December 30, when it dismissed the case.

■ Brovold and Folkedahl suggest that Fed.R.App.P. 4(a)(2) applies to this case and makes the Bank's notice of appeal effective. Rule 4(a)(2) provides that "a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." In other words, if the district court announces its final decision but delays entering judgment, and the loser files his notice of appeal before the court enters judgment, the premature notice of appeal becomes effective when the judgment is entered. But Rule 4(a)(2) applies only after announcement of a final decision, not of an interlocutory decision. See *United States v. Hansen,* 795 F.2d 35, 37–38 (7th Cir. 1986). As we have seen, the district court's order dismissing Brovold and Folkedahl was not final in the sense that it wrapped up the whole case, so the district court's entry of final judgment on December 30 ending the case could not make the Bank's premature notice of appeal effective.

■ The only way the district court's November 14 judgment dismissing Brovold

and Folkedahl could be final, and the Bank's notice of appeal effective, is if the court properly entered judgment under Fed.R.Civ.P. 54(b). Rule 54(b) provides that in a case involving multiple claims or parties, the district court may direct entry of final judgment "as to one or more but fewer than all of the claims or parties." Absent proper entry of judgment under Rule 54(b), an order that determines one claim in a multi-claim case, or disposes of all claims against one or more parties in a multi-party case, is not final and appealable.

■ Proper entry of judgment under Rule 54(b) requires first that the district court reach a judgment that is final in the sense that it completely disposes of a separate claim for relief or finally resolves all claims against a particular party or parties. See *Steve's Homemade Ice Cream, Inc. v. Stewart,* 907 F.2d 364 (2d Cir.1990); *United States General, Inc. v. Albert,* 792 F.2d 678, 680–81 (7th Cir.1986). The district court's order dismissing Brovold and Folkedahl meets this requirement: it disposes of a separate claim for relief by the Bank and Ofsdahl, and it also disposes of all claims against Brovold and Folkedahl.

Once it is established that the court's decision is "final," Rule 54(b) requires the district court to expressly find that "there is no just reason for delay" and to expressly direct entry of final judgment. *Auriemma v. Chicago,* 906 F.2d 312 (7th Cir.1990). The district court's November 14 order did state that, "It appearing that there is no just reason for delay, I direct that this final judgment be entered." This looks like a finding and direction to enter judgment under Rule 54(b). However, the district court did not give reasons for directing a final judgment. Nor did the district court even mention Rule 54(b). The failure to give reasons or mention Rule 54(b) casts some doubt on whether the district court has properly directed entry of final judgment under Rule 54(b).

■ The district court's failure to mention Rule 54(b) does not defeat our jurisdiction. This court has allowed appeals under

Rule 54(b) despite the district court's failure to mention the rule. See *United States General, Inc. v. Joliet*, 598 F.2d 1050, 1051 n. 1 (7th Cir.1979); *Local P–171 v. Thompson Farms Co.*, 642 F.2d 1065, 1071 (7th Cir.1981) (treating a certification of an interlocutory appeal under 28 U.S.C. § 1292(b) as sufficient to satisfy Rule 54(b)). Although it is a good idea for a court to cite the rule it is relying on in making a decision, failure to specifically mention Rule 54(b) does not deprive us of jurisdiction if the district court considered the proper factors and made the required findings in entering judgment.

The district court's failure to set out reasons for entering judgment is more troubling. To avoid time-consuming duplicative appeals, the norm in litigation—embodied in the general rule that a final judgment is one that leaves nothing to be decided—is one appeal per case. See *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 592 (7th Cir.1990). The decision to send part of a case to immediate appeal under Rule 54(b) is left to the district court's discretion. *Ibid.* But leaving the decision to the district court's discretion does not give that court carte blanche to send to this court any decision involving a separate claim or party. A district court may not enter judgment under Rule 54(b) merely to accommodate an attorney who wants to appeal immediately, and mechanically noting "no just cause for delay" on a judgment does not make it immediately appealable. Rather, because Rule 54(b) departs from the norm, and has the potential to multiply litigation costs for parties and the appellate court, the district court must carefully consider whether immediate appeal is appropriate in a particular case. As we noted in *Horn*, "[d]iscretion carefully exercised is rarely upset." *Id.* at 592. But we must be confident that the district court has actually exercised discretion, that the court has "assess[ed] the desirability of immediate judgment and unequivocally give[n] an affirmative answer." *Local P–171*, 642 F.2d at 1073.

Although Rule 54(b) does not expressly require the district court to state its reasons for entering judgment, it is important that the court explain its reasoning, both for its own and the appellate court's benefit. Explaining her reasons for deciding forces a judge to think about and reconcile the pros and cons of alternative actions before deciding which to take, thus ensuring a reasoned exercise of discretion. Explanation also better enables this court to review the district judge's decision to be sure it was based on appropriate factors. See *Horn*, 898 F.2d at 592; see also *Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir.1976).

The district court should have stated its reasons for entering final judgment dismissing Brovold and Folkedahl. Still, despite the importance of the district court setting out its reasons for entering judgment under Rule 54(b), we have consistently held that lack of an explanation does not necessarily defeat appellate jurisdiction, at least where the reasons are apparent from the record. See *Local P–171*, 642 F.2d at 1072 n. 8; *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 948–49 (7th Cir.1980); see also *United States General, Inc. v. Joliet*, 598 F.2d at 1051 n. 1. That is the case here. The court denied a motion by Brovold and Folkedahl to enter judgment, citing as its reason the possibility of piecemeal appeals. Shortly afterward, the remaining parties informed the court they had settled. Only then did the district court enter judgment dismissing Brovold and Folkedahl. Thus, the court's reason for entering judgment, while unstated, is apparent: the settlement had reduced, if it did not remove, the possibility of piecemeal appeals and the possible legal and factual overlap (and waste of appellate time) that accompany such appeals.

The question we face is whether the district court abused its discretion by entering judgment in these circumstances. We think the court did not abuse its discretion. Not only did the settlement eliminate the dangers of piecemeal appeals, but it also cut down the chance of some issues being mooted by future developments in the litigation. No other factor appears to argue against delaying the appeal. One

could argue that since the imminent settlement meant the case would soon be over anyway, delaying review would cause no great hardship to any party. But while lack of hardship from delay may persuade a district court not to enter judgment, it is not a reason, by itself, to reverse a district court's exercise of discretion in deciding to enter judgment. Cf. *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 9–10, 100 S.Ct. 1460, 1465–66, 64 L.Ed.2d 1 (1980). Though we might have decided differently, we think the district court was justified in entering judgment under Rule 54(b) and did not abuse its discretion in doing so. Therefore, we have jurisdiction over this appeal.

### III

On the merits the district court held that the settlement agreement, when read as a whole in the context of the undisputed evidence in the record, released Brovold and Folkedahl from any liability to the Bank arising out of the FmHA loan.

■■■■■■ The parties agree that Wisconsin law governs this case. In Wisconsin, courts are to construe settlement agreements and other forms of releases as contracts. *Fleming v. Threshermen's Mutual Insurance Co.*, 131 Wis.2d 123, 388 N.W.2d 908, 911 (1986). If the settlement agreement on its face clearly discloses the parties' intent, we must apply the agreement as written. *Levy v. Levy*, 130 Wis.2d 523, 388 N.W.2d 170, 173–75 (1986); *Loy v. Bunderson*, 107 Wis.2d 400, 320 N.W.2d 175, 186 (1982); *Schilling v. Milwaukee Bedding Co.*, 197 Wis. 250, 221 N.W. 743, 746 (1928). If the agreement is ambiguous, we must determine what the parties intended from the agreement and evidence of the circumstances surrounding its execution. See *Energy Complexes v. Eau Claire County*, 152 Wis.2d 453, 449 N.W.2d 35, 41 (1989); *Spencer v. Spencer*, 140 Wis.2d 447, 410 N.W.2d 629, 630–31 (1987); see also *Peiffer v. Allstate Ins. Co.*, 51 Wis.2d 329, 187 N.W.2d 182, 185 (1971). Normally, if a release's scope is not clear, the question of the release's scope is one of fact. Still, if the surrounding facts are undisputed, the release's scope is a legal question for the court (and thus a proper question for a court to decide by summary judgment). See *Arnold v. Shawano County Agricultural Society*, 111 Wis.2d 203, 330 N.W.2d 773, 778 (1983); *Plummer v. Leonhard*, 44 Wis.2d 686, 172 N.W.2d 1, 4 (1969); cf. *Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir. 1988).

The Bank argues that the settlement agreement unambiguously expresses the parties' intention to release only the Ofsdahls and F & D from any liability from claims in its 1985 suit against the Ofsdahls. Brovold and Folkedahl were not parties to this suit or the agreement concluding it, and it is hornbook law that litigation does not alter the rights of non-parties. *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). It covers "all potential disputes between [the Bank] and F & D" without addressing disputes between Bank and non-parties. Although the agreement does not in terms reserve the right to proceed against anybody, the Bank points to paragraph four, which specifically releases only the Ofsdahls and F & D from claims "relating to or arising out of" the earlier suit. Since paragraph four explicitly releases only the Ofsdahls and F & D, and only for particular claims, the Bank argues that it is clear that the settlement agreement did not release Brovold and Folkedahl from any claims arising from the FmHA loan (which were not raised in the earlier suit).

Put in this form, the argument is not entirely persuasive. The agreement did more than release the Ofsdahls. It wiped out F & D's obligation to the other directors. Although none of the papers in the record shows that the Bank promised to provide D & O insurance for Brovold and Folkedahl, the Bank concedes that it was required to maintain such coverage in force. In settling the case against the Ofsdahls, the Bank terminated that coverage retroactively, to the detriment of the remaining directors. It does not necessarily follow, however, that the abrogation of in-

surance eliminates the Bank's ability to recover from Brovold and Folkedahl.

■ Consider the two polar cases. In the first, the 1985 suit leads to the elimination of coverage for Brovold and Folkedahl because it exhausts the policy limits: F & D tenders the $1 million into court and goes home, leaving the directors to fend for themselves. In such a case the Bank has kept its promise to Brovold and Folkedahl, and they could not use the exhaustion of the policy in the first suit as a defense to the Bank's claim against them. Nothing in the Bank's concession that it was required to maintain a policy of D & O insurance implies that the directors' liability is limited to the maximum under the policy. Directors who manage to inflict injury exceeding the policy limits do not become immune by the greater gravity of their own acts. Directors who fear that the policy may be exhausted in the first case may intervene or file their own direct action against the insurer, preserving their claims to shares of the fund. Brovold and Folkedahl did neither. Although releasing the Ofsdahls while pursuing Brovold and Folkedahl may be unjust (FmHA evidently thinks their culpability less than the Ofsdahls'), that is permitted in a regime of joint and several liability. The wronged party may collect the judgment from whom it chooses; a release of the principal wrongdoer does not avail the other defendants. See *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

In the second polar case, the policy is not exhausted but cancelled. The Bank allows the insurer to walk, in exchange for the return of the premium. This is functionally identical to failure to procure insurance in the first place. But if obtaining a policy with an insufficient limit (the first case) does not extinguish directors' liability for injuries exceeding the limit, failure to obtain a policy at all (the second case) cannot logically extinguish liability on amounts greater than the limit a policy would have had. Suppose the directors' acts caused the Bank $2 million in injury (the United States' claim against the Bank was for $2.1 million). If the Bank had maintained the policy in force as promised, the D & O carrier would have paid $1 million and the directors the second $1 million. The cancellation of the policy would injure the directors by a maximum of $1 million, the amount of the missing coverage, and therefore would not wipe out their liability to the Bank for the second $1 million—although it would prevent the Bank from recovering the first $1 million.

■ Our case is somewhere between these extremes. The Bank obtained the policy. More than half of its maximum value was disbursed; the other $450,000 was cancelled. If we treat the cancellation as a refund to the Bank, then on the analogy to our second case the settlement prevents the Bank from recovering the first $450,000 of any award against Brovold and Folkedahl but does not prevent recovery of any excess. If instead we understand the settlement of the 1985 case as a genuine compromise—the claim in that case entailed fraud, potentially putting it outside the scope of F & D's policy—then the settlement comes closer to an exhaustion of the policy limits. On this view, the alternative to the settlement was either exhaustion of the limits (F & D pays $1 million) or defeat for the Bank (F & D pays nothing); in neither event would there be anything left for the benefit of Brovold and Folkedahl, if F & D would have the same defenses to their claims as it had to the Ofsdahls. By obtaining $550,000 for its coffers in a coverage dispute, and signing the release that any (sane) insurer would demand, the Bank does not necessarily forego its claims against other derelict directors.

Any difference between Brovold and Folkedahl's full exposure, and their exposure only to the excess over $450,000, depends on whether the rationale for the settlement is a defense to coverage that applies to Brovold and Folkedahl as well as the Ofsdahls. As it turns out, the Bank did not argue in the district court that F & D had a defense to liability on the policy, and the half-hearted argument to that effect in this court is too late. But that still leaves the possibility of recovering from Brovold and Folkedahl anything over $450,000 that the Bank has had to pay the United States.

Brovold and Folkedahl resist this on the ground that further litigation would put

the Bank in an impossible position. F & D obtained an agreement from the Bank to hold it harmless. If the Bank sues Brovold and Folkedahl, they will demand coverage (or at least a defense) from F & D, which will tender *its* defense to the Bank, which will then be both plaintiff and defendant in the same case. The district court used "[t]he obvious absurdity of such a circuitous result [as] evidence that the parties to the agreement understood that it was intended to release all of the directors from all of the claims that might arise". If the Bank's maximum claim against directors in the aggregate were less than $1 million, then there might be a problem of circularity. But if the Bank's claim against other directors exceeds $450,000 (as it does), then the Bank's obligation to indemnify F & D means at most that the Bank must swallow the first $450,000 plus Brovold and Folkedahl's legal fees; there is no problem of circularity for greater amounts. The district court did not discuss the significance of the fact that the Bank's claim exceeds $450,000.

Brovold and Folkedahl contend that the correspondence among counsel in the 1985 case shows that the critical consideration in the settlement discussions was the potential liability of all the directors for all claims, including the FmHA loan. The Bank had threatened to sue Brovold and Folkedahl concerning the loan. F & D recognized its duties to Brovold and Folkedahl as insureds, as well as potential defenses it might have to any claim for coverage. We agree with the district court that F & D would not have entered into a settlement that did not cover all of the directors for whom it had potential liability regarding all the conceivable claims of which it was aware. The agreement does fully release F & D. For the reasons we have canvassed, however, the release of *F & D* does not automatically release Brovold and Folkedahl.

Brovold and Folkedahl's final argument is that the disposition of the 1985 case is preclusive in this one. They were in privity with F & D, and they contend that when it was released, they won. The problem with this invocation of res judicata is that privity is insufficient. Neither issue nor claim preclusion flows from the 1985 case: no issue was resolved in Brovold and Folkedahl's favor, because the case was settled; claim preclusion does not apply because the Bank's 1985 claim against the Ofsdahls and the United States' 1987 claim against the Bank (and derivatively Brovold and Folkedahl) differ.

We hold that the first $450,000 of Brovold and Folkedahl's liability to the Bank is extinguished by the settlement. Brovold and Folkedahl remain liable for any excess—if they are liable at all, and if there is an excess in light of the Bank's settlement with the United States.[2]

VACATED AND REMANDED.

---

2. Folkedahl died on April 1, 1990, after the argument of this appeal. Folkedahl's counsel brought this to the court's (and the Bank's) attention on April 4. Under Fed.R.App. 43(a), following a suggestion of death "proceedings shall then be had as the court of appeals may direct." We direct the parties, on remand, to substitute Folkedahl's estate and address the question whether the Bank's claim survives under Wisconsin law.