In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3889

Trustees of the Pension, Welfare, and Vacation
Fringe Benefit Funds of IBEW Local 701,

Plaintiffs-Appellees,

v.

Pyramid Electric, and George P. Edwards,
individually,

Defendants,

and

Paul H. Schwendener, Inc.,

Citation Respondent-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1392--George W. Lindberg, Judge.


Argued April 12, 2000--Decided August 4, 2000


  Before Cudahy, Coffey and Kanne, Circuit Judges.

  Cudahy, Circuit Judge.  We are asked today to decide whether the district court erred in refusing to vacate a final order. But first we must decide whether that order--or any of the four that followed it--are, in fact, final and therefore appealable.

I)  Facts

  Paul H. Schwendener, Inc. is a general contractor. In the 1990s, it subcontracted with Pyramid Electrical, Inc., to complete electrical work on three of Schwendener's construction projects. The work apparently proceeded smoothly for a while. Then, for a reason undisclosed in the record, Pyramid "walked off" the final construction project, known as Loews Woodridge. See R. at 20 (Schwendener Mot. to Vacate Orders at 3 (July 28, 1999)). Schwendener apparently had to hire a different subcontractor to complete about $1.7 million of outstanding electrical work. See App. Tab B at 4 (Exhibit). Schwendener had agreed to cover Pyramid's payroll, including

its contributions to the Trustees of the Pension, Welfare and Vacation Fringe Benefit Funds of IBEW Local 701 (the Funds). Schwendener stopped making those payments, and it is unclear from the record whether the payroll cutoff precipitated Pyramid's exit or vice versa.

In any event, the Funds were out about $140,000, and wanted to recover the money. The Funds sued Pyramid, and Pyramid officer George P. Edwards, for the past due payments. Pyramid permitted an agreed judgment order to be entered for the outstanding $140,000, after the Funds "represented and warranted to Pyramid that they would pursue collection of the judgment from money due to Pyramid from Schwendener." R. at 6-2 (Objection to Agreed Order on Citation to Discover Assets). Under the agreed order, the Funds dismissed their claims against Pyramid, but maintained their claims against Edwards, promising not to seek relief against Edwards "except on due notice." R. at 2-2.

In keeping with this agreement, the Funds filed a "Citation to Discover Assets" against Schwendener. Schwendener did not, as requested in the citation, churn out a thorough accounting of its assets and liabilities with respect to Pyramid. Instead, it readily admitted that it owed Pyramid for the first project that they completed together, known as St. James. Schwendener and the Trustees agreed that Schwendener would turn over directly to the Trustees what it owed to Pyramid for the St. James project, which would cover the debt owed to the Funds. Schwendener and the Funds submitted a proposed agreed order to this effect.

In May 1999, Pyramid objected to the Funds-Schwendener deal. It argued that Schwendener also owed it money for the Woodridge project, and contended that Pyramid's union contributions associated with the Woodridge project should be paid out of Schwendener's debt to Pyramid on that project. See Tr. Vol. 1 at 3-5. At this early point in the litigation, Pyramid urged that any order settling the matter "should recite all the money owed by Schwendener to [Pyramid], and the Project where the money was earned so that this court might in the exercise of its discretion, achieve equity in compelling application of disclosure of assets." R. at 6-13 (Objection to Agreed Order at 3). At a hearing on May 19, 1999, the district court denied Pyramid's objection, and approved the agreed order by which Schwendener would make incremental payments directly to the Funds as soon as the St. James project owner made its expected payments. The Funds asked the court to continue the citation proceeding in order to retain jurisdiction until

all of the incremental payments had been made. See Tr. Vol. 1 at 6. On June 1, the district court entered an order specifically directing Schwendener to pay over the money to the Funds, and continuing the citation until Schwendener received payments from the project owner. See R. at 8; Appellant's App. at para.para. 3-4 (Order).

On June 21, before Schwendener had tendered any payments to the Funds, a Kankakee bank objected to the deal. It contended that it had a prior perfected security interest in Pyramid's proceeds from the St. James Project. See Tr. Vol. 3 at 2. The Funds told the court that "it is essential that Schwendener come forward on its citation with an analysis or . . . documentation regarding the total amount that [it] owes to Pyramid . . . I do think it's necessary that we understand how much total is due and owing from Schwendener on at least [these] three projects." See id. at 4. Presumably, the Funds were afraid that the district court might order Schwendener to pay the St. James project funds to the bank, and therefore the Funds wanted to find out if Schwendener had any other debts to Pyramid that it could tap to cover the fringe benefit payments. Schwendener resisted the lengthy examination of its books, and urged the court to cut the matter short by permitting it to pay the Trustees. The district court set the matter over, asking the parties to try to resolve it privately. See id. at 6-7.

When the parties reconvened on July 1, 1999, without a solution, the Funds again asked the judge to order Schwendener to submit to a citation hearing and document its debt to Pyramid. See Tr. Vol. 2 at 3-4. The district court agreed, and ordered Schwendener to share its documentation with the Funds. Schwendener again tried to tender the check so as to resolve the matter, but after the bank objected that a payment to the Funds would prejudice its rights as a creditor, the court ordered that the check be deposited with the clerk of court. The court then continued the matter.

On July 15, 1999, Schwendener submitted to its lawyer a total cost breakdown for the three projects on which Pyramid served as electrical subcontractor. Schwendener announced surprisingly that its books showed Pyramid actually owed it $1.4 million on the Woodridge project, which had ended so unhappily. Ultimately, taking account of Schwendener's debts on the first two projects, the contractor now contended that Pyramid owed it about $1.2 million./1

Schwendener then moved to vacate the June turnover order by which it was to pay $140,000 to

the Funds. It apparently attempted to notice the motion for a court hearing during the week of July 19, but the court calender did not permit a hearing until July 28. At that hearing, Schwendener argued that because it ultimately owed Pyramid no money, it should not have to cover Pyramid's unpaid union contributions for its employees. After receiving briefs on the matter, the district court on August 25 denied Schwendener's motion to vacate. The district court reasoned that the June and July orders were final orders. The motion was therefore, if treated as a motion to amend a final judgment pursuant to Rule 59(e), untimely. See Fed. R. Civ. P. 59(e) (motions to amend or alter judgments shall be filed within ten days of judgment). If the motion was treated as a motion for relief from a final judgment, pursuant to Rule 60, it was timely. However, under Rule 60(b), relief from a final judgment could only be appropriate in this case if evidence proffered by the moving party as newly discovered could not have been discovered before the entry of judgment, even in the exercise of due diligence. See Fed. R. Civ. P. 60(b). The court reasoned that Schwendener could have discovered Pyramid's debt much earlier, and therefore declined to grant relief from the final judgment. Schwendener asked the court to reconsider, and it again denied the motion in October. Schwendener filed a notice of appeal on November 5, 1999.

On November 23, 1999, the bank and the Funds advised the district court that they were close to a settlement on how to apportion the money turned over by Schwendener. Schwendener advised the court it had paid the turnover amount in full, and the court held that Schwendener was discharged from the proceeding. On March 14, 2000, the district court entered an order detailing the settlement between the bank and the Funds. Under that settlement, the bank took 57 percent of the money paid by Schwendener, and the Funds took 43 percent of the money. Based on this division, the Funds are still owed $79,461.41 of the $140,766.13 judgment Pyramid agreed to in April 1999. Further, the district court in the settlement order acknowledged that Schwendener was appealing the order to pay, and stated that, if Schwendener succeeded, the Funds would have to return their $61,000 portion of Schwendener's payment. In light of the Funds' partial-- and potentially temporary--recovery, Pyramid agreed to pay the Funds $5,000 a month until the Funds' entire judgment had been satisfied. Based on these terms, the district court dismissed all of the Funds' claims against Pyramid and Edwards without prejudice, giving the Funds leave to reinstate in the event Pyramid breached the settlement order. The court retained jurisdiction

for the purposes of enforcing the judgment and terms of the settlement order, and in the event of reinstatement. The court also stated that once the judgment was satisfied, the settlement called for the Funds to dismiss the action with prejudice and to sign any documents needed to release liens against Pyramid or Edwards.

II)  Analysis

We must first decide whether, for purposes of appellate jurisdiction, there has been a final order entered in this case and, if so, when it was entered. Our review on this issue of law is de novo. Federal law provides that "Courts of Appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." 28 U.S.C. sec. 1291. Whether a decision is final for purposes of section 1291 depends on whether the district court's decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Van Cauwenberghe v. Biard, 486 U.S. 517, 521 (1988). Conversely, orders that "specifically contemplate[ ] further activity in [the district] court" are generally not final. United States v. Ettrick Wood Prods., 916 F.2d 1211, 1217 (7th Cir. 1990). But if an order contemplates only ministerial actions by the court, finality may exist. See Dzikunoo v. McGaw YMCA, 39 F.3d 166, 167 (7th Cir. 1994). Evaluating the finality of the orders in this case is complicated by the fact that they were all entered after the default judgment. Post-judgment proceedings are treated for purposes of appeal as a separate lawsuit, and orders in those proceedings are appealable if final. See King v. Ionization Int'l, Inc., 825 F.2d 1180, 1184 (7th Cir. 1987). We have said that the point of post-judgment proceedings, at least in the bankruptcy context, is to adjust rights among competing creditors. See id. But we have noted that the test for "finality" is more liberal in bankruptcy proceedings. See In re Morse, 805 F.2d 262, 264 (7th Cir. 1986). Therefore, an order fixing priorities is an appealable final order even if proceedings to collect on the order are still underway.

The parties tell us that there are five candidates for the role of "final order" in this case: the March 2000 Settlement Order; the October 1999 denial of Schwendener's motion to reconsider denial of its motion to vacate; the August denial of Schwendener's motion to vacate; the July order staying the turnover order pending briefing and Schwendener's submission to a deposition and the original June turnover order. We do not think any of these orders is sufficiently final to justify our exercise of

jurisdiction. Logic would dictate that the order last in time is also the final order, so we will consider the orders in reverse.

Schwendener's attorney assured us at oral argument that the district court's March 2000 order, setting forth the settlement agreement between the Funds and the bank, left nothing before the district court. But we have qualms about that conclusion, after reading the order. The March order dismissed all claims without prejudice, and gave the plaintiffs leave to reinstate in the event that any party breached the Settlement Agreement. It is well-settled that dismissals of claims without prejudice need not jeopardize the finality of an order. See United States v. Wallace & Tiernan Co., 336 U.S. 793, 793-94 n.1 (1949). But the district court's grant of leave to reinstate the case before it is more problematic. Often, dismissals accompanied by leave to reinstate are granted early in a lawsuit, when a plaintiff can amend a complaint or remedy a procedural deficiency. See, e.g., Otis v. City of Chicago, 29 F.3d 1159, 1163-65 (7th Cir. 1994). So-called conditional dismissals may also arise in the context of settlement. For instance, courts may conditionally dismiss cases "where settlement is imminent, or where the parties have decided to settle but need considerable time to finalize the terms of their agreement." Id., 29 F.3d at 1172 (Rovner, J., concurring). Usually, in conditional dismissals based on imminent settlement, the district court grants the parties a fixed period of time within which to reach settlement terms. If terms are reached by the time the period expires, the order ripens into finality. See id. at 1166. See also Kaplan v. Zenner, 956 F.2d 149, 150 n.1 (7th Cir. 1992).

In the present case, the district court did not establish a fixed period of time during which the plaintiffs could reinstate suit, and after which the Settlement Order would become final. Instead, the court provided that the plaintiffs could reinstate the suit if any party breached the Settlement Agreement. (One might wonder what the Funds would stand to gain by reviving a suit when the Settlement Agreement already appears to require Pyramid to cover the judgment in full. The Settlement Agreement does not require individual defendant George Edwards to make any payments. So if Pyramid stopped making payments, presumably the Funds would pursue their right to recover payments from Edwards himself). In practice, this means that, until the Settlement Agreement is fulfilled without incident, the right to reinstate remains in effect. So we must calculate when the Settlement Agreement was, or will be, fulfilled. As we understand it, the

Agreement calls for Pyramid to make $5,000 monthly payments to the Funds until the Funds' full $140,000 judgment has been paid./2 As it stands now, the Funds have turned over $79,000 to the bank, and thus are $79,000 short on their judgment--an amount now apparently owed to the Funds by Pyramid pursuant to the Settlement Agreement. And the Order intimates that Pyramid may have to pay the full judgment amount if Schwendener wins on appeal.

Pyramid was to make its first monthly payment in January 2000. By our calculations, if all proceeds smoothly, it should make its last payment on the $79,000 portion of the judgment in the fall of 2001. So it appears that Pyramid has just begun to meet its obligations under the Settlement Agreement and could, therefore, still breach the pact. If so, we cannot say that the condition permitting reinstatement of the lawsuit has expired. And so we cannot say that the March order is a final order. The finality of this order is called into further question by the fact that one of its terms--Pyramid's obligation to refund the Trustees in the event they lose on appeal to Schwendener--seems to hinge on the outcome of this appeal. If so, the parties are in a difficult position, for the order cannot be appealed until the satisfaction of its conditions makes it final, and this condition, at least, cannot be satisfied conclusively until the order is appealed and we state whether or not Schwendener may be entitled to a refund, and thus whether or not Pyramid may owe additional money to the Funds.

The next candidate for final order status is the October order denying Schwendener's motion to reconsider the denial of its motion to vacate the original turnover order. In this order the district court explicitly stated that it stood by its denial of Schwendener's motion to vacate. At the time this order was entered, the Bank and the Funds had come to a tentative settlement, but had not agreed on detailed terms. So the dispute between the bank and the Funds was not formally terminated by this October order. The fact that creditors' rights remained unresolved indicates non-finality. See, e.g., King, 825 F.2d at 1184. Further, the bank's motion to vacate the June turnover order was formally still pending until November 23, when Schwendener turned a check over to the Funds. Additionally, there was a judgment only against Pyramid, and the Funds retained the right to revive their suit against Edwards. So this October order did not end the litigation on the merits; it required further proceedings before the district court to finalize the settlement arrangement. It was not a final order. See, e.g., Ettrick Wood Prods., 916 F.2d at 1216-

17. For similar reasons, the district court's order of August 25, in which it denied Schwendener's motion to vacate the original turnover order, was not final. The bank and Funds had just advised the district court of their tentative settlement that week, meaning final talks on the settlement were ongoing. Cf. King, 825 F.2d at 1184. More important, the court in the August 25 order set a briefing schedule for reconsideration of the order, thus explicitly calling for further proceedings in the case./3 Cf. Ettrick Wood Prods., 916 F.2d at 1216-17.

For similar reasons, the July order is not final. In that order, the district court called for briefing on the bank's objection to the turnover order. The court also ordered Schwendener to submit to a deposition in which to discuss its assets. These provisions make clear that the district court had not yet decided whether the bank's rights took priority over the Funds' rights, or whether Schwendener's obligations were to be modified. So long as the competing parties' rights and obligations remained unresolved, the order could not be final. See, e.g., King, 825 F.2d at 1184. Additionally, the district court scheduled a ruling on these matters for August, thus specifically contemplating additional proceedings. See Ettrick Wood Prods., 916 F.2d at 1216-17.

What remains is the June order. Read in isolation, the June order looks a great deal like a final order. In it, the district court rejected Pyramid's objection to the settlement reached between the Funds and Schwendener. The court also specifically stated the judgment amount due to the Funds, and stated Schwendener's exact debt to Pyramid. The court also prescribed that Schwendener would make payments to the Funds rather than pay Pyramid directly, and it laid out a payment schedule. Thus, the court resolved the rights and obligations of all three parties before it--Pyramid, Schwendener, and the Funds.

Moreover, this court has in the past heard appeals from turnover orders, "demonstrating [its] belief in the finality of such orders." Laborers' Pension Fund v. Dirty Work Unlimited, Inc., 919 F.2d 491, 493 n.1 (7th Cir. 1990). The district court relied heavily on Dirty Work in finding that the June turnover order was final. But we think the order in Dirty Work is actually very different from the one in this case. In Dirty Work, one of the union's creditors was found to owe the union for benefit payments. The creditor had a partner, and the partner admitted (in a deposition conducted pursuant to a citation to discover assets) that it owed the creditor a

small sum of money. The creditor insisted the partner owed even more, and had initiated state court action against the partner to recover it. The district court ordered the partner to turn over the small sum, and provided that, if the creditor succeeded in state court, the partner might have to turn over more. So in Dirty Work, there was a fixed judgment amount at issue, and the partner was ordered to pay a portion of that amount that could only grow if the partner was found liable in state court. In the present case, when the bank emerged as a creditor, there was a real possibility that the court might order Schwendener to pay both Pyramid's debt to the Funds and Pyramid's debt to the bank--this was the only reason to require Schwendener's deposition after the turnover order to the Funds had been issued. And in the present case, whether Schwendener would be ordered to pay more depended in large part on whether Schwendener had sufficient assets to cover the second creditor--a question left unresolved by the first turnover order because of the parties' failure to conduct a citation deposition of Schwendener. So the judgment amount in Dirty Work was not contingent on a later development, while the judgment amount here was subject to change.

For similar reasons, we are not persuaded that In re Morse requires us to find this order final. 805 F.2d 262. In Morse, a creditor appealed the district court's determination that its claim was unsecured. Id. at 263. We stated that because the creditor was entitled to a fixed amount of money, the judgment was final even though secured creditors might deplete the fund before the creditor recovered his money. See id. at 264-65. We then stated that if the creditor had a secured claim, the order would not be final because "competing claims may have led to a reassessment of how much of [the creditor's] claim would be deemed secured." Id. at 265. In the present case, the district judge agreed to take briefs on the bank's claim, and asked for more information about Schwendener's assets. This suggests that the trial court had not foreclosed the option of reassessing the order that Schwendener pay the Funds. Notably, the attractiveness of such a reassessment depended in large part on whether Schwendener had more available funds. If so, the order was likely to be reassessed to Schwendener's detriment; if not, the Funds were likely to suffer. In any event, the fact that the available funds were not fixed, and the fact that the Funds' claim appeared vulnerable to reassessment, distinguish the present case from Morse.

Another factor that may undermine the ostensible finality of the June turnover order in the

present case is the fact that the court specifically continued the citation for about three weeks "for further status." See Appellant's Short App. at 1-2 (Order of June 1). This continuance could be classified as a "further activity in that court," thus weighing against finality. See, e.g., Ettrick Wood Prods., 916 F.2d at 1217. Then again, it could be classified as a mere ministerial provision by which the court retained jurisdiction until Schwendener satisfied its payment obligations to the Funds, weighing in favor of finality. See Dzikunoo, 39 F.3d at 167.

In short, the June order was not strictly analogous to the final order in Dirty Work, and not technically air-tight, but it did have many earmarks of finality, if viewed in isolation. The trouble is, it defies reality to view this order in isolation. We have stated as a general matter that when determining our jurisdiction, we must "evaluate what actually occurred and determine whether [the circumstances] misled or prejudiced any party." Rice v. Sunrise Express, 209 F.3d 1008, 1015 (7th Cir. 2000). For instance, in one case, the court clerk retyped jury replies to four special interrogatories, each on a separate judgment form. See Trzcinski v. American Casualty Co., 901 F.2d 1429, 1430 (7th Cir. 1990). The last of the four forms summarized the jury's conclusion that the plaintiff had prevailed, and stated the damages to be paid by the defendant. See id. at 1430. None of the forms addressed the defendant's counterclaim or the plaintiff's request for prejudgment interest. See id. Several weeks later, the district court entered an order denying the request for prejudgment interest and stating that the order was "final." See id. A month later, the district court entered another order changing the amount awarded to the plaintiff. None of the judgments resolved the counterclaim. While the case was on appeal, the district court entered yet another order stating its intent that the order deemed "final" was indeed the final order. See id. We held that the fourth judgment form, which stated the jury's finding of liability, and an assessment of damages (which therefore looked final) was not final because it had been superseded by the order changing the amount awarded to the plaintiff. See id. at 1431. And the judgment changing the amount awarded did not resolve the counterclaim. We concluded that based on the record alone, there was no final order. We took jurisdiction only because the parties agreed that the answers to the interrogatories resolved the counterclaim.

In the present case, the June order has been superseded, just as the jury verdict was superseded in Trzcinski. The June order called

for Schwendener to pay money to the Funds alone, and required nothing of Pyramid. The March order, in contrast, called for the Funds to share the money with the bank, and for Pyramid to begin making supplemental monthly payments toward the judgment amount. So the terms of the June order have changed significantly. As in Trzcinski, subsequent events have robbed the order of finality.

One more circumstance casts doubt on the finality of the June turnover order. Though the district court announced firmly in August that the June turnover order was final, and has stuck to that position since then, neither the court nor the parties seemed to consider the order final in June. The June turnover order was entered on June 3. The Kankakee bank reared its head on June 23, objecting to the turnover order. The district court asked the parties to negotiate toward a resolution, never mentioning that the order was final and therefore subject to change only if the strict standards of Federal Rule of Civil Procedure 60(b) were met. See Tr. Vol. III at 6 (June 23 hearing). When the parties reported back without a resolution, the bank submitted a revised motion, styled a motion to vacate the turnover order. Again, the district court did not protest that the order was final and therefore governed by the stringent standards of Rule 60(b). See Tr. Vol. II at 7 (July 1 hearing). The court ordered briefing on the merits of the bank's position. See id. More important, the court ordered Schwendener to sit for a citation deposition on its assets. This suggests that the court wanted to know the extent of Schwendener's debt to Pyramid in the event that both the Funds and the bank were entitled to recover funds from this pot. We can think of no other reason to delve into Schwendener's finances. So the court gave every indication that the June turnover order was subject to revision if circumstances so required./4 As long as it looked as if additional funds might be uncovered from Schwendener, none of the parties treated the June order as though it were etched in stone.

The evolving nature of the order is not the only basis for finding it non-final. Rice suggested that the key consideration in deciding whether to waive technical errors in otherwise "final" judgments is whether the error "misled or prejudiced any party." 209 F.3d at 1015. Tellingly, in Trzcinski, we excused the district court's failure to enter a final order only because the parties agreed that the unresolved issue--the counterclaim--was essentially dead. Here, the parties bitterly dispute which order in this case is final. The Funds insist the June order was final. See Appellee's Br. at 17-20.

Schwendener argued in its reply brief that the August order denying its motion to vacate the June order was final. See Appellant's Reply Br. at 5-6. Schwendener's lawyer assured us at oral argument that the March order was final if the August order was not, but the Funds' lawyer was conspicuously silent on that point, perhaps because that concession might foreclose the Funds' ability to pursue George Edwards if Pyramid defaults on its settlement obligations. This dispute is the heart of the case. For if the June order was final, then the district court correctly stated that Rule 60(b) applied to Schwendener's motion to vacate. Therefore, the motion could be granted only if Schwendener presented new evidence that it could not have discovered earlier in the exercise of due diligence--a very high standard. But if the June order was not final, then Rule 54(b) would apply, permitting the district court to change or set aside the turnover order based on Schwendener's argument that it now realized Pyramid actually owed it money. Because the rights of the parties depend on which, if any, order is final, we cannot minimize any factor that undermines the finality of any of these orders.

In short, we find each of the five proffered "final" orders problematic. And because the merits of the case depend entirely on when the district court reached finality, we cannot take jurisdiction until a conclusively final order has been entered. Accordingly, the appeal is Dismissed.

/1 We have no opinion on the legitimacy of this calculation. Pyramid disputes it, contending it completed 70 percent of the Woodbridge work before its relationship with Schwendener deteriorated. See App. Doc. 24 at para. 3. (Edwards affidavit).
/2 The Settlement Order states that Pyramid must pay the Funds any unpaid portion of the judgment "whether . . . allocable to the funds shared with the Bank . . . or allocable to any return of amounts to Schwendener which might be required if the appeal is successful." See Supplemental Record, Doc. 45. It then states that "[t]he amount collected by [the Funds] shall not include any amounts which they share with the Bank or which must be returned to Schwendener." See id. We do not understand exactly where this language leaves Pyramid.

/3 We also reject the notion that these two orders are appealable based on 28 U.S.C. sec. 1292(a)(1), a notion raised and refuted by the Funds. That provision permits interlocutory appeals of orders refusing to dissolve

injunctions. The Funds describe the June turnover order as "injunctive in nature," and state that the August and October orders could be seen as refusals to dissolve the injunction. See Appellee's Br. at 26-27. "Some orders to pay are injunctions, [but m]ost orders to pay are not . . . the normal rule is that even interlocutory orders to pay money may not be appealed as injunctions." Pacific Reinsurance Mgt. Corp. v. Fabe, 929 F.2d 1215, 1218 (7th Cir. 1991). Further, this court has explained that "[s]ection 1291(a)(1) is designed to allow prompt appeals of decisions on the merits, and this purpose informs the definition of 'injunction.'" Uehlein v. Jackson Nat'l Life Ins. Co., 794 F.2d 300, 302 (7th Cir. 1986). Thus, only an order that effectively decides the merits, and has an irreparable effect on the merits, is considered a grant or denial of an interlocutory injunction sufficient to permit appellate jurisdiction. See id. So even if the June and July orders were injunctions--a questionable proposition, which bucks the "normal rule"--we doubt that the orders refusing to reexamine them had an irreparable effect on the merits. At most, the district court's refusal to reconsider the turnover order meant that Schwendener had to pay the money immediately. This does not mean that Schwendener cannot, in a properly presented appeal, succeed in reversing the turnover order and recover the money.

/4 The Funds now argue that even if the June order was not final, the district court was bound by it under the law of the case doctrine. See Appellee's Br. at 28. The law of the case doctrine establishes a presumption that a ruling made at one point in a lawsuit will govern throughout. See Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995). But the strength of this presumption varies with the circumstances. See id. Particularly where the court is asked to reexamine its own ruling, rather than the ruling of a higher court, it may do so "if [it] has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." Id. So in the present case, if the district court had not considered itself bound by Rule 60(b), it would have been free to examine the reality of the case based on circumstances that developed after the June order. The discovery that Schwendener did not owe Pyramid any money would have been a justifiable basis for finding the June order wrong, and while this might have worked a harm against the Funds (which would have had to seek their money elsewhere) or Pyramid (the likely alternate source for the funds), we cannot say these would have been undue harms.

After all, if Schwendener's accounting is correct, it is actually Pyramid that owes the money, and forcing the Funds to seek payment from the actual debtor is hardly an exercise of inequity. We are not saying this result was required; we merely disagree with the Funds that it was not permitted.