940 F.2d 665
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donald CROTTY and Donald Schak, as "Debtor-in-Possession",
Plaintiffs-Appellants,
v.
CITY OF CHICAGO HEIGHTS, a municipal corporation,
Superintendent for the City of Chicago Heights and
John Hogensen, et al., Defendants-Appellees.
 No. 90-2572.
 United States Court of Appeals, Seventh Circuit.
 Aruged Feb. 26, 1991.
Decided Aug. 14, 1991.
 
 Before FLAUM, RIPPLE and MANION, Circuit Judges.
 
 ORDER
 
 1
 Donald Crotty and Donald Schak held security interests in 12 apartment buildings in Chicago Heights known as the Hickory Street Apartments. In late September 1984, Chicago Heights officials posted the buildings and each apartment in the buildings as "unfit for human habitation" and ordered all tenants to vacate the buildings within 10 days. The buildings were posted pursuant to Chicago Heights Ordinance 77-7, which provided that any structure declared "unfit for human occupancy" be "posted with a placard" which "shall include ... an order that the structure when vacated must remain vacant until the provisions of the order are complied with and the order to vacate is withdrawn...."
 
 
 2
 On October 15, 1984, Chicago Heights passed Ordinance 84-15, which became effective October 24, 1984. Ordinance 84-15 provided, among other things, that if Chicago Heights' building department supervisor finds that a "dangerous, unsafe building or structure" is "beyond repair," he "may direct ... that the building or structure be removed or razed ... without option on the part of the owner to repair." Chicago Heights Ord. 84-15, Sec. 22-7(b). Section 22-5 of Ordinance 84-15 specifically defines what a "dangerous, unsafe building or structure" is. Under Sec. 22-7, a building is presumed to be "beyond repair" if "the cost of repair ... would exceed 100 percent of the current value of such building or structure...." Ordinance 84-15 allows aggrieved property owners to appeal the city's decision that a building is "beyond repair," and also provides that before demolishing a dangerous or unsafe building the City must file an action in the Cook County Circuit Court authorizing the demolition. Chicago Heights Ord. 84-15, Sec. 22-7. One month after ordinance 84-15 was enacted, Chicago Heights officials declared the Hickory Street Apartments "beyond repair." On January 4, 1985, Building Department Superintendent Joseph Ignelzi sent Crotty and Schak each a letter informing them that the apartments were beyond repair and ordering them to remove or raze the buildings within 20 days. Pursuant to Sec. 22-7, Crotty and Schak objected to Chicago Heights' proposed action and Chicago Heights convened a hearing on February 26, 1985. The hearing was continued to March 20, and again to April 3. On August 2, 1985, the hearing officer issued a decision concluding that the apartments were "beyond repair" and ordering that they be demolished. Chicago Heights subsequently filed suit in the Circuit Court of Cook County to condemn the buildings. Because of extensive vandalism to the buildings that occurred after they were originally posted and vacated, Crotty and Schak stipulated that the apartments were worthless and should be demolished. Besides this stipulation, Crotty and Schak also filed a counterclaim, alleging, among other things, several civil rights claims premised on violations of their due process and equal protection rights, and a taking without just compensation. The state court eventually dismissed the taking claim for failure to state a claim. Crotty and Schak filed, but then voluntarily dismissed, an appeal of that decision.
 
 
 3
 In the meantime, on May 14, 1986, Crotty and Schak sued Chicago Heights in federal court. After several rounds of procedural wrangling based on the parallel state and federal suits, Crotty and Schak decided to dismiss the remaining issues in their state court suit and pursue all their claims in federal court.
 
 
 4
 Crotty and Schak twice amended their complaint in federal court. Their second amended complaint contained nine counts. Count 8, the only count on appeal here, was directed at the constitutionality of Ordinance 84-15, alleging that: 1) Ordinance 84-15 violated the Illinois Constitution because it was special legislation; 2) Ordinance 84-15 violated the Illinois Constitution by depriving Crotty and Schak of their property without due process; and 3) Ordinance 84-15 violated the Illinois Constitution's equal protection clause. To resolve what it saw as "central disputed issues of law," the district court ordered Crotty and Schak to file a motion for summary judgment on Count 8. Crotty and Schak filed a summary judgment motion but that motion did not address their allegations that Ordinance 84-15 was special legislation or that Ordinance 84-15 violated their right to equal protection. Instead, Crotty and Schak's motion and supporting memorandum raised three issues. First, Crotty and Schak aruged that Sec. 22-7 of Ordinance 84-15 was facially unconstitutional because it was impermissibly vague. Second, Crotty and Schak argued that Sec. 22-7 was unconstitutional as applied because they did not receive adequate notice or a meaningful opportunity to be heard regarding both the original posting of their property as unfit for human habitation and the order requiring the apartment's residents to vacate the premises. Finally, Crotty and Schak aruged that Sec. 22-7 unconstitutionally "permits the taking of private property without just and adequate compensation therefor" because it allows Chicago Heights to order a building demolished without allowing its owners the option to repair it.
 
 
 5
 The district court issued a memorandum opinion and order disposing of Crotty's and Schak's summary judgment motion. The court first held that Crotty and Schak had abandoned their claim that Ordinance 84-15 was unconstitutional special legislation because they had not raised that claim in their summary judgment motion. Second, the court held that the process due Crotty and Schak regarding the posting of an order to vacate the apartments was not before it, since the property was posted under Ordinance 77-7, and the court ordered Crotty and Schak to address the constitutionality of Ordinance 84-15. Third, the court held that Sec. 22-7 was not unconstitutionally vague. Finally, the court held that Crotty and Schak were collaterally estopped from raising a claim that Sec. 22-7 permits the taking of private property without just compensation because they had litigated and lost that claim in state court. Crotty and Schak appeal.
 
 I.
 
 6
 The district court decided only a relatively small part of this case. Crotty and Schak's appeal is based on an entry of judgment pursuant to Fed.R.Civ.P. 54(b). The defendants filed a motion in this court to dismiss the appeal, claiming that the entry of judgment in this case was improper. A motions panel of this court denied that motion, but since we are obligated to consider the issue of our jurisdiction whenever a question regarding it arises, this court may reconsider the motion panel's decision that jurisdiction exits. After further examination of the record, we conclude that several procedural problems create sufficient doubt about our jurisdiction so that the most prudent course is to remand this case to the district court.
 
 
 7
 Federal Rule of Civil Procedure 54(b) allows the district court to direct entry of a final judgment as to one or more but fewer than all claims in a case involving multiple claims. But Fed.R.Civ.P. 58 provides that "A judgment is effective only when [set forth on a separate document] and when entered as provided in Rule 79(a)." Rule 79(a), in turn, provides that the district court clerk shall enter all judgments on the civil docket. "These entries shall be brief but shall show the nature of each paper filed ... and the substance of each order or judgment of the court." Fed.R.Civ.P. 79(a).
 
 
 8
 In this case, a separate document appearing on the standard form for "Judgment in a Civil Case" exists stating that no just reason for delay exists and directing entry of judgment for the defendants and against Crotty and Schak on Count 8. But the (supposedly) corresponding entry on the docket sheet states: "Minute order of 06/07/90: Plaintiffs' motion for summary judgment on Count VIII is denied. Defendants' motion for summary judgment [a motion unrelated to this appeal] is granted. Enter Memorandum opinion and order. (For further detail, see order attached to the original minute order form)."
 
 
 9
 This is not a proper entry of judgment. Rule 54(b) allows the entry of a final judgment; although a Rule 54(b) judgment wraps up less than all claims in a multiple-claim case, it must wrap up those claims completely. United States v. Ettrick Wood Products, Inc., 916 F.2d 1211, 1217 (7th Cir.1990) ("Proper entry of judgment under Rule 54(b) requires ... that the district court reach a judgment that is final in the sense that it completely disposes of a separate claim for relief....") The docket entry in this case, stating only that "[p]laintiffs' motion for summary judgment on Count VIII is denied," does not show that the court has finally decided Count 8 because it does not say that judgment is entered for the defendants on Count 8. Moreover, the docket entry conveys neither the "nature" nor the "substance" of the judgment it supposedly records. The substance of the judgment document in this case is that the defendants win and the plaintiffs lose on Count 8; nobody could know that by looking at the docket entry. (And as will be discussed below, the claims in Count 8 appear to overlap with some counts still before the court for adjudication.)
 
 
 10
 Neither party has raised any question about the improper entry of judgment on the docket. May the parties waive entry of judgment when a separate document sufficient under Rule 58 exists announcing the judgment? Surprisingly, we have found no case that answers this question. Rule 58 would indicate waiver is not possible, since it states that "[a] judgment is effective only ... when entered as provided in Rule 79(a)." But Rule 58 also provides that a judgment must appear on a separate document to be effective. Despite this, the parties may waive the separate document requirement, and an appellate court may hear an appeal despite the lack of a separate document, where it is clear the district court has actually reached a final decision. Bankers Trust Co. v. Mallis, 435 U.S. 381 (1978); Soo Line R. Co. v. Escanaba & Lake Superior R. Co., 840 F.2d 546, 549 (7th Cir.1988). Mallis's reasoning may be applicable here: assuming that it is clear the district court has rendered a final decision, dismissing the appeal would cause nothing but pointless delay since the district court would simply tell the clerk to enter a proper judgment on the docket. See 435 U.S. at 385. "Wheels would spin for no practical purpose." Id.
 
 
 11
 But even if the lack of a proper entry of judgment is not sufficient by itself to deprive us of jurisdiction, it is only one of several problems that create doubt about our jurisdiction. Rule 54(b) allows the court to direct entry of judgment. The record, however, raises some doubt about whether the entry of judgment here actually was directed by the court. The district court's "Memorandum Opinion and Order" mentions nothing about Rule 54(b) or about directing the entry of judgment. It gives no reasons why the district court might have thought directing entry of judgment under Rule 54(b) was appropriate. The court issued a minute order, signed by the judge, along with its opinion. Like the court's opinion, it mentions nothing about Rule 54(b) or about directing entry of judgment. Instead, the minute order, like the "judgment" entered on the docket, states only that "Plaintiffs' motion for summary judgment on Count VIII is denied.... ENTER MEMORANDUM OPINION AND ORDER."
 
 
 12
 It is true that the Rule 58 document does mention Rule 54(b), does find "no just reason for delay," and does state that "judgment is entered in favor of defendants ... and against plaintiffs ... on Count VIII." But this document is signed by a deputy clerk, not the judge. There is some writing near the deputy clerk's signature that looks like the judge's initials but we have no way of knowing that they actually are. Certainly, nothing in the documents that we know are the judge's work give any indication that the judge contemplated entering judgment: neither document mentions Rule 54(b) or the rule's operative language, and neither give any reasons for entering judgment under Rule 54(b).
 
 
 13
 Even if we could assume that the Rule 58 judgment was issued by the judge, and is not the deputy clerk's interpretation of what he or she might have thought the judge wanted, the court's failure to give any reasons for entering judgment under Rule 54(b) in this case is sufficient cause to remand. The decision to enter judgment under Rule 54(b) is left to the district court's discretion, and we will rarely overturn a careful exercise of discretion. But the court must actually exercise its discretion; the court may not mechanically direct entry of judgment every time it decides what looks like a separate claim in a case. Reciting reasons for entering judgment is important because it forces a judge to think about and reconcile the pros and cons of alternate courses of action before deciding which to take. Explanation also enables us to follow the judge's reasoning when reviewing his decision, and assures this court that the court has carefully exercised its discretion. See Ettrick Wood Products, 916 F.2d at 1218; Horn v. Transcom Lines, Inc., 898 F.2d 589, 592 (7th Cir.1990).
 
 
 14
 It is true that Rule 54(b) does not expressly require the district court to set out its reasons for entering judgment, and we have held that lack of explanation does not necessarily defeat appellate jurisdiction. See Ettrick Wood Products, 916 F.2d at 1218. But we will ignore lack of explanation only when the reasons for entering judgment are apparent from the record and where we can be sure that the district court has " 'assessed the desirability of immediate judgment and unequivocally given an affirmative answer.' " Id. (quoting Local P-171 v. Thompson Farms Co., 642 F.2d 1065, 1073 (7th cir., 1981)). Neither is the case here. As we have noted, at least some doubt surrounds whether the district judge actually directed the entry of judgment. And, the reasons for entering judgment are in no way "apparent" from the record. Indeed, there appears to be a great deal of overlap between the claims disposed of in the district court's judgment and some of the claims remaining to be decided in the district court. Moreover, it is difficult to determine exactly what is before this court on appeal. The judgment supposedly dismisses Count 8, which raises only state law due process claims (as well as other constitutional claims). But the district court's opinion seems to dispose of parallel federal due process claims as well. Did the district court mean to dismiss those federal claims? And did the court intend to enter judgment on what it characterized as Crotty's and Schak's "taking" claim, a claim Count 8 does not on its face encompass? The district court's disposition does not resolve these questions.
 
 
 15
 In addition to these technical defects, a practical problem also remains. When a court directs a final judgment under Rule 54(b) that particular claim should be resolved leaving no just reason for delaying appeal. But as we have noted, the claims in Count 8 seem to overlap with claims in other counts still before the court for resolution. Count 8 involved only state law claims. Are the federal and state due process claims raised in at least two other counts involving essentially the same issues still viable?[1] We would assume so since they have not been dismissed. Thus if argued again, the same issues would be appealed. If the court denies additional argument, the refusal to do so could be the subject of a subsequent appeal. Also, the takings claim that the court specifically disposed of in its memorandum is not included in the judgment. These and other problems discussed above expose this case to piecemeal and possibly redundant appeals. A resolution of all of these interlocking claims may be more appropriate than an interim judgment under Rule 54(b).
 
 
 16
 Given the uncertainty and the general lack of attention to detail surrounding the entry of judgment in this case, the prudent course is to remand to the district court. Cf. Auriemma v. Chicago, 906 F.2d 312 (7th Cir.1990). On remand, the district court may decide to enter judgment under Rule 54(b), or may decide not to do so. If the court decides not to enter partial judgment, but instead proceeds to deal with all of the issues in the complaint, we will dismiss the appeal for want of jurisdiction. If the court does decide to enter judgment under Rule 54(b), the court should state the reasons why immediate appeal is desirable and proper. The court should also specify in its judgment precisely which claims it is disposing of, and ensure that its judgment is properly entered on the docket.
 
 
 17
 REMANDED WITH DIRECTIONS.
 
 
 
 [1]
 Count 8 of the plaintiffs' second amended complaint, which alleges violations of the Illinois State Constitution, includes the following: "The ordinance furthermore effectively deprives plaintiffs of their rights under Article 2, Section 2, of the Illinois Constitution as it deprives plaintiffs of their property without due process of law and in violation of the right to equal protection of the laws."
 The following are excerpts from two of the counts still before the district court:
 "Count 3--Defendants, acting under color of law, and pursuant to a policy to discriminate against blacks, violated Plaintiffs' rights to procedural due process, substantive due process and equal protection guaranteed under the Fourteenth Amendment and the Constitution of the United States, in violation of 42 U.S.C. Sec.1983.
 "Count 7--Defendants conspired to and did in fact deprive Plaintiffs of their property without due process of law in violation of Illinois Constitution Article II, Sec. 2, by engaging in intentional malicious and wrongful conduct...."