929 F.2d 1215
 PACIFIC REINSURANCE MANAGEMENT CORPORATION, Petitioner-Appellee,
v.
George FABE, Superintendent of Insurance for Ohio, as
Liquidator of Ohio General Insurance Company, and
First National Indemnity Company,
Respondents-Appellants.
 Nos. 90-2102, 90-2233.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 21, 1991.
Decided April 12, 1991.
 
 Michael A. Stick, Samuel W. Ach, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, Ill., for petitioner-appellee.
 Steven R. Gilford, David M. Spector, Ira J. Belcove, Mayer, Brown & Platt, Chicago, Ill., Scott Edward North, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Ohio Reinsurance Corp., et al.
 Paul W. Schroeder, F. Samuel Eberts, III, Jones, Day, Reavis & Pogue, Chicago, Ill., for respondents-appellants.
 Before BAUER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Ohio Reinsurance Corporation belongs to a reinsurance pool of which Pacific Reinsurance Management Corporation is manager. Reinsurance treaties call for participants to share both gains and losses. This agreement also requires the parties to arbitrate any dispute about financial responsibility. Pacific Reinsurance initiated an arbitration that would value all participants' obligations and wind up the pool. In 1988 the arbitrators ordered the participants to pay into escrow their shares of the pool's shortfall pending final decision. Ohio Reinsurance's share exceeds $7 million, which it refused to deposit.
 
 
 2
 Pacific Reinsurance applied to a district court in California for enforcement of the arbitrators' interim award. The court granted enforcement. Ohio Reinsurance still did not pay. After Ohio Reinsurance filed a notice of appeal, the district court directed it to post a supersedeas bond, failing which the judgment would become executable. Ohio Reinsurance did not post the bond. Its appeal from the order to fund the escrow is pending in the Ninth Circuit (it was argued in January). Meanwhile, we must decide whether Pacific Reinsurance can collect.
 
 
 3
 Execution has not been a simple matter. Pacific Reinsurance registered the judgment in the Northern District of Illinois under 28 U.S.C. Sec. 1963 and sought to obtain assets held in trust for Ohio Reinsurance by Harris Trust & Savings Bank. The trust came into being in 1985, when Ohio Reinsurance's parent company, Celina Financial Corp., sold the reinsurance business to Kensu Holdings. Celina created a subsidiary, First National Indemnity Co., that became settlor of a trust on which Ohio Reinsurance may draw to satisfy obligations under its policies. Ohio Reinsurance and First National Indemnity contend that the trust assets are unavailable to satisfy the California judgment, because it stems from an interim rather than final arbitration award and hence does not represent obligations under the policies.
 
 
 4
 Complicating matters, Ohio Reinsurance began to experience financial difficulties. Before Pacific Reinsurance registered the judgment in Illinois, Ohio's Superintendent of Insurance asked Harris Trust not to disburse anything without consulting him. The Superintendent instructed Harris Trust not to pay anything into the escrow. Harris Trust was in a pickle--both settlor and beneficiary of the trust deemed it unavailable to fund the escrow, and a state regulator had purported to forbid disbursements.
 
 
 5
 As this action progressed, Ohio Reinsurance's fortunes deteriorated. On December 14, 1989, the Superintendent placed both Ohio Reinsurance (now called Ohio General Insurance Co., an alteration we ignore) and First National Indemnity under "supervision", a step that gives state officials substantial control of the business. 39 O.R.C. Sec. 3903.09. On February 8, 1990, the Court of Common Pleas in Franklin County, Ohio, placed Ohio Reinsurance in "rehabilitation" under Sec. 3909.12 & .13, which required it to cease writing new policies and authorized the Superintendent to ask courts in other jurisdictions to freeze its assets. The district court denied a request to freeze the money held in trust in Chicago, concluding that Illinois (whose law governs this suit) would not honor Ohio's rule. On March 7, 1990, the district court directed Harris Trust to segregate assets sufficient to satisfy the California order. Harris Trust complied and has been dismissed as a party. On March 28, 1990, the Court of Common Pleas in Franklin County granted the Superintendent's motion to convert the rehabilitation to a liquidation. The court's order enjoins all persons from prosecuting any claim for relief against Ohio Reinsurance except in the liquidation court in Ohio. This came too late, the district court believed, to prevent Pacific Reinsurance from collecting the money that had already been ordered separated from the trust. 1990 WL 60721, 1990 U.S. Dist. LEXIS 4544 (N.D.Ill.).
 
 
 6
 Many of the arguments the Superintendent (as Liquidator) and First National Indemnity press on us are more properly addressed to the Ninth Circuit. If the judgment works a preference for one reinsurance pool, or if federal courts should abstain so that claims may be handled collectively in Ohio, then the Ninth Circuit can provide all appropriate relief. Nothing in the order to put assets in escrow prejudices the Liquidator's ability to retrieve the money if the Ninth Circuit reverses.
 
 
 7
 Enforcement proceedings do not allow collateral attacks on the judgment. We must take the 1988 California judgment as a binding obligation of Ohio Reinsurance. Our only question is whether the assets held in trust are available to satisfy that obligation. First National Indemnity and the Liquidator say they are not, for three principal reasons: that Sec. 1963 does not allow registration, that Illinois allows the use of trusts to shield assets from creditors, and that Ohio law gives the Superintendent power to block payment. We consider these in turn.
 
 Section 1963 provides:
 
 8
 A judgment in an action for the recovery of money ... entered in any district court ... may be registered by filing a certified copy of such judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
 
 
 9
 Appellants contend that Pacific Reinsurance does not have a money judgment. As they see things, it has an injunction for the benefit of the reinsurance pool as a whole. Until the arbitration is over and a final judgment entered, appellants contend, there is nothing to register. The arbitration has indeed ended--the arbitrators ordered Ohio Reinsurance to pay more than $20 million--but the district court in California has yet to enforce the award. Appellants are resisting enforcement on the ground that for two weekends during the arbitration the neutral arbitrator shared a hotel room with a female attorney representing Pacific Reinsurance. The arbitrators' interim award remains in force, but appellants insist that nothing with the appellation "interim" may be registered under Sec. 1963.
 
 
 10
 If as appellants say the district court in California entered an injunction, then they have been in contempt of court for more than two years and have a lot of explaining to do. Traditional injunctions (orders "to do") are not registrable under Sec. 1963, Stiller v. Hardman, 324 F.2d 626, 628 (2d Cir.1963), because that would be pointless: they act in personam nationwide. Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451-52, 52 S.Ct. 238, 239-40, 76 L.Ed. 389 (1932). Some orders to pay are injunctions, Bogosian v. Woloohojian Realty Corp., 923 F.2d 898, 900-02 (1st Cir.1991); cf. Centurion Reinsurance Co. v. Singer, 810 F.2d 140, 144-45 (7th Cir.1987). Most orders to pay are not, however, and the normal rule is that even interlocutory orders to pay money may not be appealed as injunctions. People Who Care v. Rockford Board of Education, 921 F.2d 132 (7th Cir.1991); Uehlein v. Jackson National Life Insurance Co., 794 F.2d 300, 302 (7th Cir.1986). We need not try to locate the indistinct line between these categories, for district judges can write many orders either way. Judge Hatter, who entered this order, treated it as a money judgment, calling for a supersedeas bond as the price of non-enforcement and leaving enforcement in private hands. At all events, Sec. 1963 does not distinguish money judgments from "injunctive" orders to pay. It allows registration of "[a] judgment in an action for the recovery of money". Judge Hatter's order is a "judgment", see Fed.R.Civ.P. 54(a), and the California suit is "an action for the recovery of money". It is about nothing else.
 
 
 11
 That Pacific Reinsurance will not put the money in its own treasury is irrelevant. The statute does not make collection hinge on whether the holder of the judgment keeps the money. Consider the situation of a trustee in bankruptcy. The trustee's recoveries inure to the benefit of the estate, which is to say the creditors. Persons who owe debts to the estate also may be its creditors. What the estate recoups in a preference action it may eventually pay back to the same creditor. No one supposes that trustees are disabled from using Sec. 1963 because they do not claim the money personally, or because the person from whom collection is made may receive part of the estate (as Ohio Reinsurance may receive part of the escrowed funds in its role as a creditor of the pool).
 
 
 12
 So Pacific Reinsurance has a judgment that in principle may be registered. But the judgment is on appeal, making registration possible only "when ordered by the court that entered the judgment for good cause shown". This language entered the statute in 1988 to deal with the anomaly that a judgment for which no supersedeas bond had been posted was enforceable during appeal only in the rendering district. See Hershel Shanks & Steven A. Standiford, Schizophrenia in Federal Judgment Enforcement: Registration of Foreign Judgments Under 28 U.S.C. Sec. 1963, 59 Notre Dame L.Rev. 851, 855-57 (1984). After the effective date of the amendment (February 17, 1989), Pacific Reinsurance asked the district court to make the judgment immediately enforceable. Judge Hatter's order, entered on May 2, 1989, "[a]fter considering the memoranda and declarations submitted by the parties and the argument of counsel, and good cause appearing therefor", directs Ohio Reinsurance to put up a bond or suffer execution. Ohio Reinsurance asked the Ninth Circuit for relief from that order; the court left it alone.
 
 
 13
 Section 1963 conditions registration during appeal on a finding of good cause. Judge Hatter made such a finding, which the Ninth Circuit declined to disturb. Appellants observe that the California order does not expressly allow registration pending appeal, but as Judge Nordberg observed it is difficult to believe that Judge Hatter contemplated enforcement limited to the Central District of California. Everyone understood that Ohio Reinsurance's assets were elsewhere. Section 1963 does not call for magic words or require district judges to write opinions. Perhaps appellants would have a better argument if they were able to show that Pacific Reinsurance had not called Sec. 1963 to Judge Hatter's attention. The papers filed with the district court in California are not part of our record, and appellants have been content to recite the language of Judge Hatter's order without suggesting that the proceedings leading to its entry would enlighten us about its meaning.
 
 
 14
 Once a judgment has been registered, state law determines which assets may be reached. Fed.R.Civ.P. 69(a). A judgment creditor in Illinois has no greater rights in an asset than does the judgment debtor. Seidmon v. Harris, 172 Ill.App.3d 352, 122 Ill.Dec. 284, 286, 526 N.E.2d 543, 545 (1st Dist.1988); Bank of Homewood v. Gembella, 48 Ill.App.2d 316, 199 N.E.2d 293 (1st Dist.1964). Ohio Reinsurance argues that it lacked any ability to reach the corpus of the trust. The district court rebuffed the claim that Celina Financial created a spendthrift trust. The trust provides that the money may be used to pay Ohio Reinsurance's underwriting obligations. To its protest that the California judgment does not establish such an obligation, and therefore does not create an occasion for reaching the assets, the district court observed that the trust allows reimbursement of "allocated loss expenses", which includes Ohio Reinsurance's share of the pool. Ohio Reinsurance has a liability under the California judgment on account of its insurance operations. Judge Nordberg concluded: "the trust's very purpose is to satisfy [Ohio Reinsurance's] creditors; otherwise, such transfer in trust would have been in fraud of creditors." We could not put it better and endorse Judge Nordberg's analysis of this subject without adding to the bulk of the reports.
 
 
 15
 Last we come to the Superintendent's argument that his oversight of Ohio Reinsurance's affairs blocks any use of the trust that does not meet with his approval. States govern insolvency and related proceedings in the insurance business by leave of Congress in the McCarran-Ferguson Act. Illinois, like 27 other states, uses the Uniform Insurers Liquidation Act. Ill.Rev.Stat. ch. 73 pp 833.1-833.13. Section 9 of the Uniform Act provides that "[i]n the event of the commencement of delinquency proceedings in any reciprocal state no action or proceeding in the nature of an attachment ... shall be commenced in the courts of this state against such delinquent insurer or its assets." Is Ohio a "reciprocal state" with Illinois? Ohio carried the Uniform Act on its books between 1953 and 1983, when it enacted a law based on the Insurers Supervision, Rehabilitation and Liquidation Model Act. This Model Act is in force in 12 states in addition to Ohio.
 
 
 16
 The Model Act contains a broad reciprocity clause. 39 O.R.C. Sec. 3903.01(N). We may assume that from Ohio's perspective Illinois is a reciprocal state. Whether reciprocity works both ways depends on the Uniform Act, in force in Illinois, whose definition of "reciprocal state" is more restrictive. The version of Sec. 1(7) of the Uniform Act in force in Illinois identifies as a "reciprocal state" any jurisdiction in which the "substance and effect of the provisions of [sections 1 to 10 of the Uniform Act], both inclusive are in force." Judge Nordberg concluded that from the perspective of a Uniform Act state, another state is a "reciprocal state" only if it has adopted the Uniform Act. The reference to the "substance and effect" of sections 1-10 allows for insubstantial local variations but not, the district court thought, for the substitution of an entirely different statute. We are reluctant to decide whether a Uniform Act state limits reciprocity to other Uniform Act states or whether, as the Superintendent contends, the Model Act embodies the "substance and effect" of the Uniform Act with respect to the six features of insurance regulation that the Superintendent submits are important. Cf. Twin City Bank v. Mutual Fire Marine & Inland Insurance Co., 646 F.Supp. 1139, 1141 (S.D.N.Y.1986), affirmed mem. 812 F.2d 713 (2d Cir.1987). No Illinois court has addressed the subject. Indeed, no court in any Uniform Act state has decided whether a Model Act state is a "reciprocal state". We need not do so, because we agree with the district court's alternate ground of decision.
 
 
 17
 Paragraph 833.9 says that no collection suit may be "commenced" after "delinquency proceedings" have begun in a reciprocal state. The California judgment was entered in 1988. Pacific Reinsurance registered the judgment in June 1989. No formal proceedings had been begun in Ohio by then. The first step did not occur until December 1989, when the Superintendent put Ohio Reinsurance under "supervision". Although the Superintendent had sent Harris Trust a letter in 1986 announcing his "oversight" of withdrawals from the trust, oversight is not the same as a "delinquency proceeding". Uniform Act states define "delinquency proceeding" as "any proceeding commenced against an insurer for the purpose of liquidating, rehabilitating, reorganizing or conserving such insurer." Ill.Rev.Stat. ch. 73 p 833.1 (emphasis added). No "proceeding against" Ohio Reinsurance began until February 1990, when the Court of Common Pleas opened a "rehabilitation". The idea behind Sec. 9 of the Uniform Act, which blocks collection actions once a "delinquency proceeding" is under way, is that the creditor can take its claim to the forum established by the other state. In the collective proceeding all claims will be honored or written down together, under consistent standards. When Pacific Reinsurance received its judgment in October 1988, and when it registered the judgment in June 1989, there was no collective proceeding in which it could participate. Pacific Reinsurance went to the only forum available to it. Ohio Reinsurance's stalling in Illinois cannot conceal the fact that Pacific Reinsurance's action was "commenced" before Ohio started "delinquency proceedings". See Martin v. General American Casualty Co., 226 La. 481, 76 So.2d 537 (1954) (decision under the Uniform Act allowing an attachment to proceed because it was filed before delinquency proceedings were commenced in another state).
 
 
 18
 None of appellants' other arguments requires us to supplement the careful analysis in the district court's opinion. We share the district court's ultimate assessment: For more than 18 months Ohio Reinsurance refused to comply with a judgment against it, "resisting every court order to do so and compelling [Pacific Reinsurance] to bring this enforcement action. Now Ohio [Reinsurance] insists that its long-established, long-evaded obligation to honor a federal court judgment be relegated to liquidation proceedings brought after repeated delays of its own making--even though this court entered judgment against Ohio [Reinsurance] before those proceedings commenced. Federal court judgments are not so easily avoided."
 
 
 19
 AFFIRMED.