**CHICAGO DOWNS ASSOCIATION, INC., Plaintiff–Appellee,**

v.

**Dennis R. CHASE, doing business as Sports Achievements Association, Defendant–Appellant.**

Nos. 90–2078, 90–2672.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1991.

Decided Sept. 26, 1991.

Thomas D. Nash, Jr. (argued), Nash & Lalich, Chicago, Ill., for plaintiff-appellee.

Wayne F. Plaza (argued), Edward Dismukes, Rooks, Pitts & Poust, Chicago, Ill., for defendant-appellant.

Before COFFEY, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Dennis R. Chase appeals the district court's entry of summary judgment against him in a breach of contract action brought by Chicago Downs Association, Inc. Chicago Downs owns and operates a parimutuel horse racing track in Illinois. Chase had sold Chicago Downs what is in essence risk insurance, protecting the race track from loss in the event the track had not collected a sufficient amount of funds to cover the guaranteed payout of $50,000 to the winner of a multiple race wager called the "Super Bet." Chicago Downs filed suit, and, during the course of this case, submitted a variety of other motions and memoranda, finally filing a motion for summary judgment. Chase's attorney, Thomas J. Royce, repeatedly failed to file responsive pleadings, communicate with opposing counsel, or attend status conferences or prove-ups. Summary judgment was entered against Chase for $136,807 plus costs. The court also permitted Chicago Downs to register its judgment in Chase's domicile of California to forestall purposeful asset liquidation.

Chase appeals, claiming he should be spared from the default entry of summary judgment that resulted from Attorney Royce's apparent negligence. He furthermore insists that there are insufficient

facts to support a registration of the judgment in California.

We affirm the district court in all respects.

## A. Facts

Chicago Downs Association, Inc., an Illinois corporation licensed by the Illinois Racing Board, conducts pari-mutuel harness racing at a racetrack called Sportsman's Park. Dennis R. Chase is a California businessman who owns and operates an unincorporated enterprise called Sports Achievements Association. Chase provides risk reimbursement coverage on special promotional sporting events like hole-in-one contests at golf courses, fishing derbies, bingo games, and "300" games (a perfect score) bowled in bowling tournament league play. In 1980, one of his first years in business, Chase "insured" 1,200 such events which offered prizes worth a total of $10 million. He collected $360,000 in gross premiums and fees and paid off 19 winners worth $160,000.

Beginning in 1985, Chicago Downs offered at its Sportsman's Park track a pari-mutuel wagering pool called the "Super Bet." In order to win the Super Bet, the bettor was required to select the first two horses to finish in exact order in both the fifth and sixth races and the first three horses to finish in exact order in the seventh race. The wager was $1.00. In the event there was more than one winner on a particular evening, the pool was divided evenly among the winning tickets. The Super Bet pool increased rapidly because unawarded amounts from one night's betting were added to the next night's purse. Between the years 1985 and 1988, it was not uncommon for the collectable Super Bet pool to exceed several hundred thousand dollars.

In 1988 Chicago Downs decided that they wanted to establish a $50,000 minimum payout to the winner of the Super Bet. Chicago Downs received permission from the Illinois Racing Board to supplement the Super Bet pool by $50,000. Therefore, Chicago Downs was able to offer a daily minimum of $50,000 regardless of whether that amount had been independently created by patrons' wagers and the rollover of existing pools.

Through a broker Chicago Downs determined Chase provided the most competitive premium for risk reimbursement coverage for the $50,000 minimum payout. Chase agreed to provide coverage and drafted an "Agreement of Reimbursement." The Agreement, effective between July 30 and December 31, 1988, provided in part that any time Chicago Downs was required to pay a Super Bet winner the guaranteed minimum of $50,000 when less than that amount was in the Super Bet pool, Chase was obligated to reimburse Chicago Downs in an amount equal to $50,000 minus the amount then in the pool. The Agreement imposed liability limits on Chase of $150,000 in the aggregate, with no single occurrence payment to exceed the sum of $50,000. In consideration for potential future reimbursement, Chicago Downs paid Chase $15,000.

Unfortunately for Chase, on three occasions the bettors beat the track and won the $50,000 minimum when the Super Bet pool had accumulated far less. The total deficit subject to reimbursement under the Agreement exceeded $125,000. Immediately following each of the payouts to each of the winning Super Bet tickets, Chicago Downs alerted Chase of that fact, furnished Chase with proof of payment to the winners, and complied with the other reporting procedures required by the Agreement. Chicago Downs made demand on Chase for reimbursement with respect to each of the covered occurrences pursuant to the terms of the Agreement. Chase refused to make such payments to Chicago Downs.

Chicago Downs filed in U.S. District Court a breach of contract suit against Chase (d/b/a Sports Achievement Association) in an effort to recover the contracted-for reimbursement of its losses for three Super Bet payouts inadequately capitalized by the accumulated wagering pool. Chicago Downs filed a one-count complaint seeking liquidated damages for the three occurrences covered by the Agreement equal to

$126,432.75. Chicago Downs also asked for an award of prejudgment interest as permitted by Illinois law on liquidated contract damages and costs of the suit. This complaint was dismissed by the district court for lack of jurisdiction because Chicago Downs failed to properly plead diversity of the parties. The complaint was amended and refiled August 22, 1989.

On August 25, 1989, Attorney Thomas J. Royce filed an appearance with the court on behalf of Dennis Chase. Soon thereafter the court vacated the earlier dismissal of the complaint and ordered Chase to respond to the amended complaint by September 21, 1989. A status hearing for September 25, 1989 was also established.

On September 25, 1989, the district court entered a default judgment against Chase because "[d]efendant failed to appear for the status hearing," and "[d]efendant failed to respond to the complaint." The judge remarked at the status hearing: "I have got no alternative, I think, except to default him to see if that gets some action out of [Chase and Royce]." The judge was surprised at the lack of any response to the complaint and the failure of the defense to appear at the status conference. The judge noted: "[t]his is not like Tom Royce[]. He is a very good dependable lawyer and he hasn't shown up and he hasn't answered, and unless somebody is not paying him or something, and he hasn't communicated with [plaintiff's counsel]." The judge at that time set October 4, 1989 as the date for the parties to appear and prove-up damages. On October 4, Royce once again failed to appear at the proveup, nor did he file any motions with the court in the meantime asking for relief. Counsel for Chicago Downs appeared with a witness and was successful in getting default judgment damages on the Agreement of $126,432.75 plus costs of $266.05. The court entered judgment for this amount. In so awarding, the court remarked: "[I] was surprised that Mr. Royce did not show up because he is a very, very dependable lawyer. I cannot presume that his absence is an accident."

A few days later, on October 12, the district court finally did "get some action out of" Royce. On that day Royce filed a Motion to Vacate Default Judgment. Royce, in support of his motion, appeared before the court to explain that his failure to file a response to Chicago Downs' complaint, or appear at the status hearing or appear at the prove-up was due to the fact that he had not received the amended complaint or any of the proper notices for the hearing and prove-up in the mail. Royce also confessed to having misunderstood a posted bulletin concerning the date by which the amended complaint was to be filed. Royce prefaced the hearing with a public announcement: "First of all, I would like to spread of record that it is public knowledge that I have been charged with a misdemeanor complaint. I have conferred with my client relative to this matter and he believes that it would have no effect on my representation of him in this case." This comment is the only record reference of Chase's assessment of Royce's representation. The court vacated the prove-up, vacated the default judgment and ordered Royce to answer the complaint by October 19, 1989. Status conference was set up for November 13, 1989.

Royce did not file an answer to the complaint on behalf of the defendant until October 31, 1989—twelve days late. He also failed to attend the previously scheduled status conference of which he was personally notified by the district court judge. Nevertheless, the court reset the status hearing for January 16, 1990, and established a discovery cutoff for January 16 as to all written discovery and depositions of the "principals." The judge's ire at being ignored by Royce again was tempered as indicated by his comment: "Mr. Royce isn't here ... I think he's on trial isn't he?" and "[I] know he has been beset with a host of difficulties of recent weeks. I think I will take that into consideration."

At the January 1990 status conference, Royce was given leave to file Chase's affirmative defenses to Chicago Downs' complaint. These were filed January 17, 1990. Also, Chicago Downs was given leave to file a Motion for Summary Judgment by

February 5, 1990, with the answer from defendant due February 20, 1990, and Chicago Downs' reply to the answer due February 27, 1990. Yet another status conference was scheduled for March 27, 1990.

On February 5, 1990, Chicago Downs filed its Motion for Summary Judgment, its Statement of Material Facts As To Which There Is No Genuine Issue (as required by Local Rule 12(*l*)), and its Memorandum of Law in Support of its Motion for Summary Judgment. In its Memorandum of Law, Chicago Downs denied the legal sufficiency and adequacy of the Affirmative Defenses filed by Royce on January 17, 1990.

Royce never filed a response to Chicago Downs' Motion for Summary Judgment nor did he file any opposition to Chicago Downs' statement of uncontroverted facts. On March 5, 1990, Chicago Downs' attorney called Royce to see why he had not responded to the summary judgment motion. Royce claimed (once again) that he did not receive a copy of the motion which was mailed to him. Chicago Downs' counsel then provided him with another copy via messenger.

On March 6, 1990, Royce filed a Motion for Summary Judgment on Chase's behalf. The sole reason advanced by Royce justifying summary judgment for his client was that Chicago Downs had failed to respond to Chase's previously filed Affirmative Defenses within the time alloted by the court. Royce argued that Chicago Downs' failure to deny Chase's affirmative defenses required the court to deem them as admitted and, thus, Chase was entitled to summary judgment. The court denied Chase's Motion for Summary Judgment because his motion failed to conform to Local Rule 12(*l*) which requires that such a motion have attached to it a statement of facts to which there is no genuine issue. By the terms of that rule, "failure to submit such a statement constitutes grounds for denial of the motion." Conversely, the court ruled that Chicago Downs' previously submitted statement of uncontested facts was deemed admitted by Chase due to Royce's failure to submit any opposition to them as required by Local Rule 12(m). However, the court reserved ruling on Chicago Downs' motion for summary judgment and ordered the parties to brief the issue of whether California law entitled Chicago Downs to summary judgment. California law was stipulated in the Agreement as being controlling over the construction and interpretation of the Agreement. The court ordered that Chicago Downs' brief on California law's resolution of this case be filed by March 30, 1990 and that Chase's response thereto be filed by April 6, 1990, and Chicago Downs' reply to be filed by April 13, 1990.

On March 30, 1990, Chicago Downs filed its Memorandum of Law with respect to California law. It was discovered that under California law, the plaintiff in a breach of contract action could gain a higher rate of prejudgment interest than under Illinois law. Chicago Downs therefore amended its requested damages upward to $136,807 plus costs. Royce never filed a response to Chicago Downs' memorandum.

Finally, on April 16, 1990, counsel for Chicago Downs appeared before the district court on its Motion for Summary Judgment. Royce did not appear on Chase's behalf. Summary judgment was decided and entered for Chicago Downs for $136,807 plus costs. On May 22, 1990, an attorney affiliated with Royce filed a notice of appeal from the order granting summary judgment in favor of Chicago Downs. On June 28, 1990, Chase fired Royce and retained new counsel who filed an appearance to oppose Chicago Downs' Motion to Register the Judgment in Other Districts. The district court granted Chicago Downs' motion to register the judgment pursuant to 28 U.S.C. § 1963.

Chase, represented now by new counsel, appeals the entry of summary judgment and the court's order permitting Chicago Downs to register the judgment in other districts during the pendency of this case's appeal.

*B. Discussion*

We are somewhat mystified by the grounds of Chase's appeal. In his brief Chase asserts that the court's entry of

summary judgment should be set aside for reasons commonly justifying the application of Fed.R.Civ.P. 60(b), *Relief from Judgment or Order.* Chase claims that it is unfair for him to be saddled with a legal result which is strictly the function of his former attorney's "gross negligence" in the defense of this suit below.

Federal Rule of Civil Procedure 60(b) provides a simple remedy (by motion) for a court to suspend a previously announced judgment on the grounds of mistake, inadvertence, surprise, excusable neglect, misconduct, or, according to Rule 60(b)(6), "any other reason justifying relief from the operation of the judgment." Chase, in his brief, suggests that "[i]t is well settled that Federal Rule of Civil Procedure 60(b)(6) provides relief from summary judgment where the gross negligence of counsel has permitted the motion of summary judgment to go unopposed. *Boughner v. Secretary of Health, Education and Welfare,* 572 F.2d 976 (3d Cir.1978); *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234 (D.C.Cir. 1964); *Reno v. International Harvester,* 115 F.R.D. 6 (S.D.Ohio 1986)." (Appellee's br. p. 12.) Despite the conspicuous absence of Seventh Circuit authority in the above quotation (authority which, had it been cited, would have been contrary to the stated point),[1] Chase's appellate posture is further weakened by his failure to have ever filed a Rule 60(b) motion with the district court. Chase explains in his brief, however, that:

At the outset, [Chase] states that no Rule 60(b) motion was filed before the District Court. As soon as [Chase] learned of the entry of summary judgment against him, he [dismissed Royce and] immediately retained current counsel. By that time, notice of appeal had already been filed [on Chase's behalf] with [the Seventh Circuit] by an attorney affiliated with Attorney Royce. It is fundamental that once notice of appeal is filed, the District Court is divested of jurisdiction over the case as to the issues on appeal.

(Appellant's br. p. 14.)

■ This is not an accurate statement concerning the district court's ability to entertain a Rule 60(b) motion during the pendency of an appeal. In *Simons v. Gorsuch,* 715 F.2d 1248 (7th Cir.1983), this court stated:

Finally, we turn to the Simonses' motion to vacate the judgment below for fraud and misrepresentation, as provided in Rule 60(b)(3), Fed.R.Civ.P. We first note that the district court denied the appellants' motion on the ground that it lacked jurisdiction pending direct appeal from the judgment, and alternatively, on the merits. The district court was incorrect as to its jurisdiction to consider a Rule 60(b) motion. We have held that a district court has jurisdiction to consider and deny Rule 60(b) motions during the pendency of an appeal, *Textile Banking Co. v. Rentschler,* 657 F.2d 844, [849-50] (7th Cir.1981).

*Id.* at 1252. A remand is necessary only if the district court is inclined to grant relief. *Rentschler,* 657 F.2d at 849.

The trial court did not lose jurisdiction to hear a Rule 60(b) motion presented by defendant because of the filing of a notice of appeal. *See Standard Oil of California v. U.S.,* 429 U.S. 17, 18–19, 97 S.Ct. 31, 32, 50 L.Ed.2d 21 (1976), and *SEC v. Advance Growth Capital Corp.,* 539 F.2d 649, 650 (7th Cir.1976), *overruled in part on other grounds, United States v. City of Chicago,* 663 F.2d 1354, 1359 (7th Cir.1981). Chase should have filed a 60(b) motion with the district court to preserve for the appellate court (if necessary) his arguments aimed at getting relief from Royce's negligent handling of the case. No such motion was ever filed, thus depriving the district court

---

**1.** In *Reinsurance Co. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275 (7th Cir.1990), this court held "[D]espite appellant's contentions, this court has never held that an attorney's gross negligence justifies relief under Rule 60(b). *Coleman v. Smith,* 814 F.2d 1142 (7th Cir.1987); *Inryco, Inc. v. Metropolitan Engineering Co., Inc.,* 708 F.2d 1225 (7th Cir.1983); *Ben Sager*

*Chemicals International, Inc. v. E. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir.1977)." *Id.* at 1278. In a footnote to that case, citing *Daniels v. Brennan,* 887 F.2d 783 (7th Cir.1989), we wrote: " '[t]he remedy for a client who suffers ... because of the negligence of his attorney is a malpractice action;' [*Daniels*] 887 F.2d at 788." *Reinsurance,* 902 F.2d at 1278.

of the opportunity to develop a record, review it and then rule on whether Chase deserves relief from the effects of Royce's obvious negligence. Chase's Rule 60(b) arguments are waived for purposes of appeal. *Trustees of Cent. Laborers' Welfare Fund v. Lowery,* 924 F.2d 731, 732–33 (7th Cir.1991).[2]

■ Even despite his (erroneous) belief that a Rule 60(b) motion cannot be entertained by the district court after a notice of appeal has been filed, Chase nevertheless argues that it would have been futile for him to have filed a Rule 60(b) motion in this case. Chase indicated in his brief and at oral argument that he believed the court would not have been inclined to grant a Rule 60(b) motion due to its bias against Royce (and his misfortunes) and consequently Royce's client. We are unfamiliar with any precedent which relieves a party from making every valid argument and motion before the district court simply because of the slim possibility of that argument's or motion's success. In fact, based on the record, we are not persuaded that the district judge in this case was adversely biased toward Royce or Chase. The judge on a number of occasions took time during the various hearings to express his high regard for attorney Royce, and his sympathy for Royce's personal legal ordeal which was the possible reason for his inattention to Chase's claim. A large number of accommodations throughout this "litigation" were made by the district court judge "in consideration" for Royce's "difficulties;" it seems likely from the record that the judge would have been amenable to hear this case anew if the parties had counsel who were less distracted. In any event, a party's suspicion of the unlikelihood of a motion's success does not spare him from having to make the motion before the district court in order to have the merits of such motion examined on appellate review.

■ Lastly, we review the district court's order permitting Chicago Downs' registration of the judgment pursuant to 28 U.S.C. § 1963 in other districts. Section 1963 states:

A judgment in an action for the recovery of money or property entered in any district court or in the Court of International Trade may be registered by filing a certified copy of such judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien.

The judgment in this case is on appeal, making registration possible only "when ordered by the court that entered the judgment for good cause shown." We noted in *Pacific Reinsurance Management Corp. v. Fabe,* 929 F.2d 1215 (7th Cir.1991), that the "good cause" language "entered the statute in 1988 to deal with the anomaly that a judgment for which no supersedeas bond had been posted was enforceable during appeal only in the rendering district." *Id.* at 1218. We have recently held in *Trustees of Chicago Truck Drivers v. Central Transport, Inc.,* 935 F.2d 114 (7th Cir.1991): "[f]indings under § 1963, like

---

**2.** Even if we were to decide this case on Rule 60(b) principles, Chase would not likely prevail under Seventh Circuit precedent and on the record before us. In *Daniels* this court held that "Because of an interest in finality ... [r]elief under Rule 60(b) is warranted 'only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust.'" *Daniels,* 887 F.2d at 790 (quoting *Margoles v. Johns,* 798 F.2d 1069, 1073 (7th Cir.1986), *cert. denied,* 482 U.S. 905, 107

S.Ct. 2482, 96 L.Ed.2d 374 (1987)). The record before us now reflects that Chase was consulted about Royce's legal problems, yet nevertheless retained his services. As we noted earlier, this is the only record reference we have regarding Chase's satisfaction with Royce. We do not believe that a party's decision under conditions of candid disclosure (which ultimately turns out to be a bad decision) is the kind of "extraordinary circumstance" that justifies disturbing a decision's finality.

the decision to require or excuse the filing of a [supersedeas] bond pending appeal, affect only the collection of a judgment. A court with jurisdiction to authorize execution if the appellant does not post a bond—power a district court possesses during an appeal—also may make the findings that under § 1963 authorize execution in another district. The statute calls on a district judge to make 'good cause' findings while an appeal is pending[.]" *Id.* at 120.

In the present case, Chicago Downs' motion to register the judgment in other districts during the pendency of appeal noted that Chase owns no property in the district in which the deciding district court sits, that Chase does own substantial property in other districts, that Chicago Downs fears that Chase can and may transfer or conceal such property otherwise necessary to satisfy the judgment if given time to do so, that registering judgment will forestall his ability to do so, and that Chase declined the possible alternative of posting a supersedeas bond. The district court found in the absence of a bond that the conditions set forth in Chicago Downs' motion constituted "good cause" for registration of the judgment in other districts under § 1963. This was not an abuse of discretion. *Cf. Associated Business Tel. Sys. v. Greater Capital,* 128 F.R.D. 63 (D.N.J.1989).[3]

For all the foregoing reasons the decision of the district court is

AFFIRMED.

---

**3.** The court in *Associated Business* noted: "In the instant matter, we conclude that 'good cause' exists to allow plaintiff to register its judgment in Illinois and elsewhere. As explicitly addressed in the commentary to the 1988 amendment [to § 1963], good cause can be shown 'upon a *mere* showing that the defendant has substantial property in the other [foreign] district and insufficient in the rendering district to satisfy the judgment.' Siegal, *Commentary to 1988 Revision,* 28 U.S.C. § 1963 (West Supp. 1989)." (Emphasis added.) *Associated Business,* 128 F.R.D. at 68.