UNITED STATES of America, Plaintiff,

v.

**REAL PROPERTY KNOWN AND NUMBERED AS 429 SOUTH MAIN STREET, NEW LEXINGTON, OHIO etc., Defendant.**

No. C2–92–1165.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 27, 1995.

Marcia Harris, Assistant U.S. Attorney, Columbus, Ohio, for Plaintiff.

Randy L. Happeney, Lancaster, Ohio, for Defendant.

## *OPINION AND ORDER*

GRAHAM, District Judge.

This is a civil forfeiture action filed by the United States on December 23, 1992 pursuant to 21 U.S.C. § 881. The government sought forfeiture of the defendant real property on the basis that the property was used to commit or to facilitate the commission of a drug offense. William G. Swallow (hereinafter "claimant") filed a claim to the property as the owner of record on April 27, 1993, and on May 19, 1993, he filed an answer to the forfeiture complaint.

On September 24, 1993, the government filed a motion for summary judgment. Claimant filed a memorandum opposing the government's motion on November 8, 1993. Claimant argued that a genuine issue of fact existed in regard to whether the property was used to facilitate a drug offense, and whether seizure of the property would violate the Eighth Amendment's Excessive Fines Clause under *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In an opinion and order filed on December 13, 1993, this court found that the government had produced evidence demonstrating probable cause to believe that the defendant property was used to commit or facilitate the commission of a drug offense under Title 21, Chapter 13, Subchapter 1, and that claimant had produced no evidence sufficient to create a genuine issue of fact in that regard. This court further found that claimant failed to demonstrate the existence of a triable issue as to whether the forfeiture of the property would violate the Excessive Fines Clause, and that the evidence before the court did not show such a violation. This court granted the government's motion for summary judgment.

Claimant pursued an appeal to the Sixth Circuit Court of Appeals. In a decision rendered on May 9, 1995, the court of appeals found that summary judgment was appropriate on the issue of probable cause. A majority of the panel concluded that the award of summary judgment was also proper on the excessive fine issue, and that the forfeiture of the property did not violate the Eighth Amendment. Claimant also argued on appeal that he should have received notice and a hearing in accordance with the Supreme Court's decision in *United States v. James Daniel Good Real Property,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), which was issued the same day as this court's order granting summary judgment. In light of the incomplete record on this issue, the court of appeals remanded the case to this court to determine whether there was a seizure of the defendant property by the government which would have mandated predeprivation notice and a hearing, and if so, to determine the appropriate remedy. The opinion of the court of appeals was issued as a mandate on August 2, 1995.

Following remand, this court requested briefs from the parties on the issues remanded by the court of appeals and held an oral hearing on September 28, 1995, at which the parties were given the opportunity to present additional evidence or arguments relating to the remand issues and to claimant's Rule 60(b) motion. These matters are now before the court for a ruling.

■ The first issue before the court is whether claimant should have received predeprivation notice and a hearing. The court of appeals directed this court to analyze this case under the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under *Eldridge*, determining whether a property owner is entitled to notice and a hearing before the seizure of his property by the government requires consideration of the following factors: 1) the significance of the property interest at stake; 2) the risk of erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and 3) the government's interest in pre-notice seizure, including the avoidance of burdensome additional procedures. *Id.* at 335, 96 S.Ct. at 903.

■ The factors in *Eldridge*, considered as a whole, would weigh in favor of predeprivation notice and a hearing in this case. The defendant property was the claimant's residence, in which claimant had a substantial interest. The risk of erroneous deprivation was minimized by the fact that the *in rem* warrant was issued by a neutral magistrate judge following a probable cause determination based on a review of the government's evidence. Further, this is not a case which involved ownership of the property by a potentially innocent owner. However, preseizure notice and a hearing would have further served to minimize the risk of an erroneous deprivation. Finally, the government has offered no evidence which would indicate that exigent circumstances were present in this case which would militate against preseizure notice.

This does not end the inquiry, as the court of appeals also directed this court to determine if there was a "seizure" of claimant's property in this case sufficient to trigger the due process requirements of predeprivation notice and a hearing. As noted by the Supreme Court in *Good*, — U.S. at —, 114 S.Ct. at 503, the exercise of authority short of seizure, such as filing a *lis pendens* or obtaining a restraining order, would not trigger the notice and hearing requirement. Thus, the Sixth Circuit indicated that the government can meet its burden of showing that the notice and hearing requirement did not apply by demonstrating that it only took measures short of a seizure against claimant's property which did not amount to a deprivation of property. *United States v. Real Property Known and Numbered as 429 South Main Street, New Lexington, Ohio*, 52 F.3d 1416, 1421 (6th Cir.1995).

The government argued in its trial brief that there was no seizure of claimant's property. Claimant offered no evidence or argument to dispute this position. The government indicated that a *lis pendens* was filed to prevent the sale of the property during the pendency of the forfeiture action. The parties have also filed a stipulation of evidence which includes a copy of the occupancy agreement which was signed by the claimant. This agreement allowed claimant and James Swallow, who was leasing claimant's two-story garage, to remain on the property. The agreement required claimant to maintain casualty and fire insurance on the property in the amount of $30,000, but a notation on the agreement states that claimant already had the property insured for that amount. The agreement also provided that the United States Marshal could demand that claimant vacate the property, but that in such event claimant had the option to remain on the property, thereby requiring the marshal to institute eviction proceedings. None of the other provisions of the agreement were such as would place any significant burden on claimant, and there is no evidence that the agreement had any impact on claimant's use and enjoyment of the property.

Unlike the situation in *Good*, where the government received rents due to the property owner, claimant received all rent monies due from James Swallow. The government has submitted copies of receipts indicating that claimant received these funds. The par-

ties have also stipulated the testimony of John Snowden, a former deputy United States Marshal who served the *in rem* warrant and executed the occupancy agreement with claimant. Snowden stated that after serving a copy of the *in rem* warrant and executing the occupancy agreement, he left the property and at no time thereafter did he or anyone from the Marshal's Office exercise or attempt to exercise any control over the property, or interfere with claimant's receipt of rents. The parties further stipulated the testimony of Mark Stroh, the deputy marshal who assumed Snowden's duties, that this lack of interference continued after Snowden's departure. There is no evidence that the actions taken by the government caused claimant to sustain any damages or lost profits or otherwise interfered with claimant's use of the property. This court concludes that there was no seizure of claimant's property which would trigger the *Good* requirement of predeprivation notice and hearing.

■ Even if the evidence in this case had indicated that a seizure occurred, this court would still have to determine what the appropriate remedy would be for a *Good* violation. Some circuits which have addressed this issue have concluded that an illegal seizure does not require that the property be declared immune from forfeiture, and that the appropriate remedies are the exclusion of any evidence which was illegally seized from use in the forfeiture proceedings and requiring the government to pay to the claimant any damages, such as lost profits or rents, which accrued from the date of seizure to the date of the adversary hearing. *See e.g., United States v. All Assets & Equipment of West Side Bldg. Corp.,* 58 F.3d 1181 (7th Cir.1995); *United States v. Real Property Located at 20832 Big Rock Dr.,* 51 F.3d 1402 (9th Cir.1995). *But see, United States v. One Parcel of Real Property, Located at 9638 Chicago Hgts.,* 27 F.3d 327 (8th Cir. 1994) (*Good* violation requires dismissal of the forfeiture action with leave to file a new action if the statute of limitations has not run). This court agrees with the view of the Seventh and Ninth Circuit that a violation of the predeprivation notice and hearing requirement does not mandate that the forfeiture be set aside. The court notes that even

if a seizure had occurred in this case, claimant produced no evidence of any damages he sustained during the pendency of the forfeiture action.

The court concludes that no due process violation under *Good* occurred in this case.

■ Also before the court is claimant's motion for relief from judgment under Fed. R.Civ.P. 60(b)(6). That rule provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> * * * * * *
>
> (6) Any other reason justifying relief from the operation of the judgment.

Claimant argues that he is entitled to relief under Rule 60(b)(6) due to gross neglect on the part of his former counsel. The government opposes this motion on several grounds. First, the government asserts that in granting the relief sought, this court would violate the mandate of the court of appeals. In *Standard Oil Co. v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), the Supreme Court held that a party petitioning the district court for relief under Rule 60(b) is not required to first obtain the permission of the court of appeals. The Court noted, *Id.* at 18, 97 S.Ct. at 32, that the appellate mandate relates to the record and issues previously before the district court and the court of appeals and does not purport to deal with possible later events.

■ A district court must regard the appellate decision as conclusive unless the party brings to its attention the sort of circumstances which justify relief under Rule 60(b). *Barrow v. Falck,* 11 F.3d 729 (7th Cir.1993). A district court also does not have jurisdiction to alter an appellate ruling where the appellate court has already considered and rejected the basis for relief cited in the Rule 60(b) motion. *DeWeerth v. Baldinger,* 38 F.3d 1266 (2d Cir.1994); *Seese v. Volkswagenwerk, A.G.,* 679 F.2d 336 (3d Cir.1982). Although a district court must adhere to the mandate as the law of the case, the court is

free to decide any issue that was not explicitly or implicitly decided in the prior appeal. *Taylor v. United States,* 815 F.2d 249 (3d Cir.1987); *Fine v. Bellefonte Underwriters Insurance Co.,* 758 F.2d 50 (2d Cir.1985). An affirmance by the court of appeals based upon the existing record before the court does not limit the district court's authority to consider a Rule 60(b) motion based on matters not considered or decided by the court of appeals. *Sellers v. General Motors Corp.,* 735 F.2d 68 (3d Cir.1984).

The issue of whether the judgment in this case should be set aside due to the alleged gross negligence of counsel to permit the presentation of additional evidence was not before the Sixth Circuit. Therefore, this court has authority to consider claimant's Rule 60(b) motion to the extent that it raises issues not decided by the court of appeals.

■ One question raised by claimant's motion is whether gross negligence of counsel can constitute grounds for relief under Rule 60(b)(6). As a general rule, Rule 60(b)(6) can be used only in exceptional circumstances in cases which are not covered by the first five subsections of Rule 60(b). *Mallory v. Eyrich,* 922 F.2d 1273 (6th Cir.1991); *In re Salem Mortgage Co.,* 791 F.2d 456 (6th Cir.1986). "Exceptional circumstances" under Rule 60(b)(6) means "unusual and extreme situations where principles of equity mandate relief" and the party must show that absent relief, extreme and undue hardship will result. *Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir.1990). A claim of simple legal error unaccompanied by extraordinary or exceptional circumstances is not cognizable under (b)(6). *Pierce v. UMW Welfare & Retirement Fund,* 770 F.2d 449, 451 (6th Cir.1985).

■ Some circuits have thus far declined to recognize that Rule 60(b)(6) can provide a basis for relief from judgment due to the gross neglect of counsel. *See, e.g., Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat,* 902 F.2d 1275, 1278 (7th Cir.1990) (noting that "this court has never held that an attorney's gross negligence justifies relief under Rule 60(b)."); *Sutherland v. ITT Continental Baking Co.,* 710 F.2d 473, 476–477 (8th Cir.1983) ("Rule

60(b) has never been a vehicle for relief because of an attorney's incompetence or carelessness."). In *United States v. Parcel of Land with Bldg., App. and Imp.,* 928 F.2d 1 (1st Cir.1991), the court concluded that relief under Rule 60(b) was not appropriate due to the gross neglect of counsel, although the court recognized that there might be rare occasions where gross neglect might be characterized as an extraordinary circumstance.

In so holding, many of these courts have noted the Supreme Court's decision in *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 (1962) where the Court concluded that the petitioner was not entitled to relief due to the attorney's unexcused conduct which led to the dismissal of his claim because petitioner voluntarily chose the attorney as his representative and could not now avoid the consequences of the acts or omissions of his freely selected agent. The Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 396–97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993) reaffirmed the principle that clients are held accountable for the acts and omissions of their attorneys. The Court noted, *Id.,* at 392–93, 113 S.Ct. at 1497, that to justify relief under subsection (6), a party must show "extraordinary circumstances suggesting that the party is faultless in regard to a failure to take timely action."

Other courts have upheld the grant of relief under Rule 60(b)(6) upon a showing of gross neglect of counsel. *See, e.g., Boughner v. Secretary of Health, Educ. & Welfare,* 572 F.2d 976 (3d Cir.1978); *L.P. Steuart, Inc. v. Matthews,* 329 F.2d 234 (D.C.Cir.1964). The Sixth Circuit has noted that gross neglect on the part of counsel is generally not enough to set a judgment aside under Rule 60(b)(1) on the basis of excusable neglect. *Whitaker v. Associated Credit Services, Inc.,* 946 F.2d 1222, 1224 (6th Cir.1991). However, in *Fuller v. Quire,* 916 F.2d 358 (6th Cir.1990), the court upheld the grant of Rule 60(b)(6) relief on the basis of inexcusable conduct on the part of plaintiff's attorney as being within the trial court's discretion. The Sixth Circuit relied in part on the fact that the plaintiff exercised due diligence in attempting to mon-

itor his case and gave his attorney all the necessary information and documents prior to the filing of the case. *Id.* at 359–361.

Gross negligence or misconduct on the part of counsel has been found in some cases to satisfy the "exceptional circumstances" requirement. *See, e.g., Fuller,* 916 F.2d at 359–361 (relief within discretion of court where the attorney's failure to maintain contact with the plaintiff, to appear in court on plaintiff's behalf, and to inform plaintiff about dismissal of case was inexcusable, and where plaintiff exercised due diligence in attempting to find out about progress of case); *Boughner,* 572 F.2d at 978 (while attorney's failure to oppose motion to dismiss due to his involvement in his campaign for judge, the loss of his secretary responsible for keeping his calendar, and his large backlog of cases did not itself constitute extreme circumstance, fact that attorney had neglected to oppose motions to dismiss in fifty-two other cases tipped the scales); *United States v. Cirami,* 563 F.2d 26 (2d Cir.1977) (counsel had a mental disorder which led him to neglect his duties while assuring defendants he was tending to them); *L.P. Steuart,* 329 F.2d at 235 (extraordinary circumstances found where affidavit of attorney indicated personal problems led to dismissal for failure to prosecute, where plaintiff made numerous inquiries which attorney did not answer, and where plaintiffs were falsely informed that steps were being taken to reactivate the case).

In other cases, courts have upheld the district court's holding that the conduct of counsel did not arise to the level of an extraordinary circumstance. In *Chicago Downs Ass'n, Inc. v. Chase,* 944 F.2d 366 (7th Cir.1991), the court concluded that relief was properly denied where the attorney failed to appear at the summary judgment proceedings, resulting in summary judgment being entered for the plaintiff. The court noted, *Id.* at 371, n. 2: "Because of an interest in finality ... [r]elief under Rule 60(b) is warranted 'only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust.'" *Daniels v. Brennan,* 887 F.2d 783, 790 (7th Cir.1989) (quoting *Margoles v.*

*Johns,* 798 F.2d 1069, 1073 (7th Cir.1986)). *See also, Parcel of Land with Bldg.,* 928 F.2d at 6 (attorney's failure to oppose motion for summary judgment in forfeiture case, to file a specific answer, or to conduct discovery not sufficient); *Heim v. Commissioner of Internal Revenue,* 872 F.2d 245 (8th Cir.1989) (counsel's failure to offer evidence in tax case, to rebut assertion of penalties or to notify clients of tax court decision and his stipulation to an erroneous appraisal of property, even if gross negligence, not an adequate showing of exceptional circumstances); *Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601 (7th Cir.1986) (conduct of attorney in failing to appear at pretrial conference, to respond to motion to dismiss due to involvement in another trial and to notify plaintiffs of dismissal not sufficient for relief under (b)(6)); *Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co.,* 560 F.2d 805 (7th Cir.1977) (relief under Rule 60(b)(6) not appropriate where counsel failed to attend hearing on motion for judgment for failure to comply with discovery, which resulted in dismissal of case, where there was no showing that defendant diligently watched over case, and where defendant presented no evidence to support his allegations that counsel's failure was due to his preoccupation with personal problems); *Cline v. Hoogland,* 518 F.2d 776 (8th Cir. 1975) (attorney's failure to respond to summary judgment motion because he was busy with other matters not sufficient).

Claimant in this case asserts that his former counsel was grossly negligent because his memorandum contra the government's motion for summary judgment was poorly drafted and because counsel failed to submit any affidavits to support the memorandum. While the memorandum was less than artfully drafted, counsel did raise relevant issues in this memorandum which were later argued on appeal. These points included an attack on the sufficiency of the agent's affidavit which was offered in support of the government's position that there was probable cause to forfeit the property, as well as an allegation that the government had failed to prove that the property was used to commit a felony offense and that probable cause had not been shown. Counsel further argued on claimant's behalf that no nexus was shown to

exist between any drug offense and the real property, and that forfeiture of the property would constitute an excessive fine in violation of the Eighth Amendment.

Claimant alleges that he recently learned that his former attorney resigned from the Ohio Bar due to a disciplinary complaint filed against him involving the commingling of funds. Claimant has submitted a copy of the disciplinary complaint to this court. Claimant also states in his affidavit that his attorney had not handled a case in federal court since before 1990, and that counsel had been removed from the criminal appointments list in Perry County due to incompetence. However, claimant offers no evidence to disclose the exact nature of his counsel's federal court experience or the last date of his appearance in federal litigation. The mere fact that an attorney has not recently appeared in a federal court does not *per se* indicate that the attorney is incompetent to handle federal matters. Claimant has also produced no evidence showing the circumstances surrounding counsel's removal from the appointment list. This may have been due to the pending disciplinary case. That matter involved the commingling of funds, which does not support claimant's allegations that counsel was incompetent to handle claimant's case. Further, claimant has produced no evidence to support a finding that counsel did not diligently pursue his case due to his personal difficulties. *See Ben Sager Chemicals,* 560 F.2d at 811 (noting that plaintiff failed to elicit testimony from former counsel to support allegations that counsel was preoccupied with personal problems).

Claimant also sets forth in his affidavit information which he contends should have been provided to the court by counsel. He states that he was contacted by the informant regarding a purchase of marijuana, and that the informant made arrangements to come to claimant's residence to pick it up. He alleges the marijuana was in his possession for personal consumption. He stated the first transaction occurred in an alley behind his residence, and that in the subsequent transactions the marijuana came from his pants. Claimant further states that the total amount of marijuana sold was 12.5 grams. He also claims that the property was given to him as a gift by his parents and was not obtained with drug proceeds. Finally, claimant disputes that the property was used to facilitate a drug transaction because he was storing the marijuana in his pocket and was not storing any other marijuana in the house.

None of this information would have affected this court's ruling on the motion for summary judgment. Claimant's affidavit fails to assert facts sufficient to indicate the existence of a defense such as entrapment. He does not dispute that he in fact sold marijuana to the informant on three occasions, and therefore his claim that the marijuana was for personal consumption does nothing to refute the government's evidence that the property was used to facilitate a felony drug trafficking offense. He does not contest that the second and third sales occurred at his residence. His claim that he had the marijuana in his pocket is a meaningless distinction, because both he and his pocket were located in the residence at the time of the sale and he used his residence as a convenient location to make the sale. The fact that the amount of marijuana sold on the three occasions totaled about 12.5 grams would not change this court's ruling on the motion for summary judgment. It was already apparent from the dollar amounts involved in the sales, which were included in the agent's affidavit attached to the complaint, that the quantities of marijuana sold were not large. However, that quantity, combined with the fact that there was more than one sale demonstrates a sufficient nexus with the property to support the forfeiture and to avoid an excessive fine problem under the Eighth Amendment. Claimant's assertion that the property was a gift from his parents is irrelevant, since the government sought forfeiture of the property under the theory that the property was used to commit or facilitate the commission of drug offenses, not under the theory that the property was purchased with drug proceeds. Finally, claimant's assertion that the property was not used to facilitate the sales because the amount of marijuana was small does not create a genuine issue of fact warranting a trial, because claimant does not dispute the

fact that the last two sales occurred in his residence. Thus, claimant has offered no significant information beyond that already before this court in granting summary judgment and before the court of appeals in upholding the summary judgment. *See, Cline,* 518 F.2d at 778 (denying relief due to counsel's failure to respond to summary judgment where the proposed memorandum contra failed to raise any new issue not previously considered in disposing of motion). Claimant has not shown that he has a meritorious claim or defense. *See, Parcel of Land with Bldg.,* 928 F.2d at 5.

The court concludes that claimant has not shown that his former counsel's performance in this case arose to the level of gross negligence constituting exceptional circumstances. Counsel filed a claim and an answer on claimant's behalf and filed a memorandum opposing summary judgment which contained relevant legal arguments sufficient to prompt a dissenting opinion on appeal. He timely notified claimant of his intention to discontinue the practice of law. Claimant has not demonstrated that the omissions on the part of his attorney were significant enough to have had any effect on this court's ruling. The circumstances present here are less egregious than the circumstances present in many of the above-cited authorities where counsel's negligence was found insufficient to warrant relief, and far below conduct which has supported the granting of relief in other cases. Even assuming that counsel was grossly negligent here, his conduct was not so extraordinary as to warrant relief under Rule 60(b)(6). Further, claimant has offered no evidence that he himself acted diligently in pursuing his case. Unlike *Fuller,* 916 F.2d at 359, 361, where the court noted plaintiff's affidavit stating that he had given his attorney all the necessary documents and information prior to filing the case and made repeated efforts to contact his attorney about the status of the case, claimant has presented no evidence that he made any efforts himself to contact his attorney or to discuss the facts of this case or any possible defenses to the forfeiture.

It is obvious that claimant will suffer some harm due to the forfeiture of his property.

However, the mere fact that a party suffers some financial loss as a result of judgment being entered against him cannot in itself be sufficient to mandate Rule 60(b) relief, since if this were true, relief would be required in every case. More is required for a showing of extreme and undue hardship or an unjust judgment. As the Fifth Circuit noted in ruling on a claim of negligence on the part of counsel in a motion under Rule 60(b)(1) in *Pryor v. United States Postal Service,* 769 F.2d 281, 288–289 (5th Cir.1985):

> Were this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear ... While we are sympathetic to the plight of a client prejudiced by his attorney's inadvertence or negligence, the proper recourse for the aggrieved client, as the Supreme Court noted in *Link,* is to seek malpractice damages from the attorney. [citing *Link,* 370 U.S. at 634, n. 10, 82 S.Ct. at 1390, n. 10].

*See Link,* 370 U.S. at 633, 82 S.Ct. at 1390 ("There is no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.") and at 634, n. 10, 82 S.Ct. at 1390, n. 10 ("[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the *defendant.*" (emphasis in original)). This court concludes that the circumstances presented in this case do not constitute an unusual and extreme situation where the principles of equity mandate relief. *Olle,* 910 F.2d at 365.

 The government also opposes the claimant's motion on the basis of untimeliness. A motion under Rule 60(b)(6) must be made within a reasonable time depending upon the circumstances of each case. *Fuller,* 916 F.2d at 360; *Smith v. Secretary of Health & Human Services,* 776 F.2d 1330 (6th Cir.1985). The pendency of an appeal does not affect the time in which a party

must file a motion under Rule 60(b). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir.1991). In determining what constitutes a reasonable time, the court may consider such factors as the interest in finality, the reason for the delay, the ability of the party to learn earlier of the grounds relied on and prejudice to the opposing party. *Kagan*, 795 F.2d at 610–611 (finding delay of six months from dismissal of case unreasonable).

Here, claimant filed his Rule 60(b) motion approximately nine months after the entry of summary judgment, and after the conclusion of his appeal. He contends that he only recently obtained the information about his former counsel. However, the information could have been readily learned through inquiries to the disciplinary counsel and the Perry County Court of Common Pleas. The pending appeal would not have impeded the filing of the motion, and in fact, if this court had been inclined to grant the motion, a request to remand could have been made to the court of appeals, thus avoiding the expenditure of judicial time and resources at the appellate level. This case was filed in December of 1992, and the events which formed the basis for the forfeiture occurred in August of 1991. Thus, four years have passed, during which the memories of witnesses may have faded. The government, the public and the courts have an interest in the finality of this action. These factors weigh in favor of a finding that the motion is untimely. However, even if claimant's motion is deemed to be timely, the delay serves to further illustrate claimant's lack of diligence in pursuing his case, which weighs against granting relief under Rule 60(b)(6).

Based upon the foregoing, claimant's motion for relief from judgment under Rule 60(b)(6) is denied. Further, based upon this court's conclusion that no due process violation occurred during the forfeiture proceedings in this case, the court hereby reaffirms the judgment of forfeiture previously entered in this case in favor of the government.

It is so ORDERED.